Janet G. HOWARD, Plaintiff,

v.

The GARAGE DOOR GROUP, INC., Defendant.

Civil Action No. 00–2580–GTV.

United States District Court, D. Kansas.

April 5, 2002.

---

Alan V. Johnson, Stephen D. Lanterman, Sloan, Listrom, Eisenbarth, Sloan & Glassman, Topeka, KS, for Plaintiff.

Scott C. Hecht, Christopher J. Leopold, Stinson Morrison Hecker LLP, Kansas City, KS, Scott J. Bloch, Bradley Rob Finkeldei, Stevens & Brand, L.L.P., Lawrence, KS, for Defendant.

## MEMORANDUM AND ORDER

VanBEBBER, Senior District Judge.

Plaintiff, Janet Howard, brings this case alleging that Defendant, The Garage Door Group, Inc., now known as Amarr, Inc. ("Amarr"), discriminated against her in violation of the Age Discrimination in Employment Act, 29 U.S.C. § 621 et seq. ("ADEA"), and interfered with her legal rights under the Family and Medical Leave Act, 29 U.S.C. § 2601 et seq. ("FMLA"). The case is before the court on Defendant's motion for summary judgment (Doc. 56). For the reasons set forth below, Defendant's motion is granted.

## I. FACTUAL BACKGROUND

The following facts are either uncontroverted or are based on the evidence submitted with the summary judgment papers and viewed in the light most favorable to the nonmoving party. Immaterial facts and facts not properly supported by the record are omitted.

Defendant is a garage door manufacturing company that operates a facility located in Lawrence, Kansas. Defendant's Lawrence facility employs approximately 400 people and operates on three shifts.

Jerry Pope, Defendant's Director of Manufacturing and the head of human resources at Defendant's Lawrence facility, hired Plaintiff in April 1995 to work on Defendant's assembly line. Plaintiff, who was born on January 1, 1936, was fifty-nine years old at the time; Mr. Pope was fifty-three years old. Plaintiff worked on the assembly line for several months before problems with her blood pressure forced her to transfer to the position of second shift janitor for the manufacturing area of Defendant's facility. Plaintiff's janitorial duties required her to clean and mop eight restrooms, three offices and one break room, and to empty trash dumpsters spread throughout the facility.

On August 26, 1998, Plaintiff fell and injured her shoulder while mopping one of the restrooms at Defendant's facility. The fall caused Plaintiff to lose the physical ability to mop her assigned areas and to empty her assigned trash dumpsters without assistance from other employees. As a result of the injury, Plaintiff took a total of forty non-consecutive, unpaid days off work. Defendant did not deduct any of the forty days from Plaintiff's twelve-week FMLA leave entitlement and did not inform Plaintiff that the leave might be covered under the FMLA. According to the deposition testimony of two of Defendant's human resources officials, Defendant neither deducted the absences as FMLA leave nor informed Plaintiff of the potential coverage under the FMLA because Defendant had a policy at that time of not deducting from an employee's FMLA leave entitlement if the employee took leave for an injury suffered on the job. Plaintiff testified in deposition that other than the forty days that she had already taken off work, she did not want to take any more unpaid leave.

In addition to allowing Plaintiff to take forty days off work, Defendant also assigned Plaintiff to a temporary light duty assignment for a two to three week period. Following that, Defendant permitted other employees to perform some of Plaintiff's janitorial duties for a period of time during the Fall of 1998. By November 30, 1998, however, Plaintiff had received a medical release to return to normal duty with a twenty-pound weight restriction. Despite

the release, Plaintiff steadfastly refused to perform her mopping duties. Eventually, several of Plaintiff's supervisors, including Tonya Hunsaker, a Maintenance Clerk with some supervisory responsibility over Plaintiff, Larry Randel, the second shift Maintenance Supervisor and Plaintiff's direct supervisor, and Mark Hayworth, the Maintenance Manager to whom both Ms. Hunsaker and Mr. Randel reported, met with Plaintiff and told her that she would have to resume mopping if she wanted to keep her janitorial position with Defendant. Despite the warnings, Plaintiff continued her resistance to mopping.

On January 20, 1999, Plaintiff met with Ms. Hunsaker, Mr. Randel, Mr. Hayworth, and Mr. Pope. During the meeting, Plaintiff was again informed that because Defendant viewed mopping as an essential function of Plaintiff's job, she was going to be required to resume mopping if she wished to keep her janitorial position. Plaintiff testified in deposition that she told the group that she could not resume mopping with the heavy industrial mops typically used by Defendant's janitors, but that she requested to either use a lighter mop to complete her duties or to have Defendant assign someone else to mop for her. According to Plaintiff, Mr. Pope denied both requests.[1] At the conclusion of the meeting, Plaintiff and Mr. Pope discussed the possibility of reassigning Plaintiff to another position that she could physically perform. Both individuals decided that they would ponder potential reassignments and meet again the next day.

The following day, Plaintiff met with Mr. Pope, Mr. Hayworth, and Craig Crane, Defendant's Safety and Training Manager.

During the meeting, Plaintiff, Mr. Pope, and Mr. Hayworth agreed that they could think of no positions to which Plaintiff could be reassigned. Given that, Mr. Pope terminated Plaintiff's employment. Plaintiff was sixty-three years old at the time. Plaintiff testified in deposition that nothing was said during the meeting to make her think that Defendant was discriminating against her because of her age. Plaintiff submitted an affidavit with her summary judgment papers, however, contending that had Defendant notified her on the day of her discharge that she could take up to twelve weeks of FMLA-covered leave, she would have taken the leave instead of being discharged.

Plaintiff returned to Defendant's Lawrence facility the next day to pick up a termination letter from Mr. Pope. As Plaintiff was leaving, Mr. Pope allegedly asked Plaintiff, "Why don't you check into your Social Security benefits?" In addition, Mr. Pope wrote the following in Plaintiff's termination letter: "I'm sure your attorney can help you with applying for Social Security benefits, and I will be happy to assist you with the Amarr LTD plan." Mr. Pope never specified in either his question to Plaintiff or in his letter whether he was referring to Social Security disability benefits or Social Security retirement benefits.

On February 1, 1999, Defendant hired Laverne Deay to replace Plaintiff as the second shift janitor. Ms. Deay was born on July 17, 1934 and was sixty-four years old when she was hired.

Plaintiff filed the instant lawsuit on December 27, 2000.

---

**1.** Defendant denies that Plaintiff requested to use a lighter mop during the January 20 meeting. Conceding this dispute of fact, Defendant points to Plaintiff's testimony in deposition that: (1) she admits that she was unable to use a light mop in her own home during the relevant time period; and (2) she admits that she never attempted to use a lighter mop at work prior to making the alleged request despite the fact that lighter mops were available and Defendant's management never instructed her not to use them.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(c). The requirement of a "genuine" issue of fact means that the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue of fact is "material" if it is essential to the proper disposition of the claim. Id. Essentially, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251–52, 106 S.Ct. 2505.

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This burden may be met by showing that there is a lack of evidence to support the nonmoving party's case. *Id.* at 325, 106 S.Ct. 2548. Once the moving party has properly supported its motion for summary judgment, the burden shifts to the nonmoving party to show that there is a genuine issue of material fact left for trial. *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505. "[A] party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Id.* The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id.* "Any evi-

dence tending to show triable issues will be viewed in the light most favorable to the nonmoving party." *Black Hills Aviation, Inc. v. United States,* 34 F.3d 968, 972 (10th Cir.1994) (citation omitted).

## III. DISCUSSION

### A. Age Discrimination Claims

■ The ADEA prohibits an employer from discriminating against an employee who is forty years or older on the basis of the employee's age. 29 U.S.C. § 623(a)(1), 631(a). A plaintiff bringing suit under the ADEA can prove age discrimination by either direct or circumstantial evidence. *Stone v. Autoliv ASP, Inc.,* 210 F.3d 1132, 1136 (10th Cir.) (citations omitted), *cert. denied,* .531 U.S. 876, 121 S.Ct. 182, 148 L.Ed.2d 125 (2000).

■ "Direct evidence is '[e]vidence, which if believed, proves [the] existence of [a] fact in issue without inference or presumption.'" *Shorter v. ICG Holdings, Inc.,* 188 F.3d 1204, 1207 (10th Cir.1999) (quoting Black's Law Dictionary 460 (6th ed.1990) (further citations omitted)). "A plaintiff proves discrimination through direct evidence by establishing proof of 'an existing policy which itself constitutes discrimination.'" *Stone,* 210 F.3d at 1136 (quoting *Ramsey v. City & County of Denver,* 907 F.2d 1004, 1008 (10th Cir.1990) (further citation omitted)). Statements that reflect a personal opinion or even a personal bias or prejudice do not qualify as direct evidence of discrimination. *Shorter,* 188 F.3d at 1207.

■ Absent direct evidence of age discrimination, a plaintiff's claim is analyzed under the three-step, burden-shifting framework set forth by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Stone,* 210 F.3d at 1137 (citation omitted). Under the McDonnell Douglas analysis, the

plaintiff bears the initial burden of establishing a prima facie case of discrimination. 411 U.S. at 802, 93 S.Ct. 1817. If the plaintiff presents a prima facie case, then the burden shifts to the defendant to offer evidence suggesting a legitimate, non-discriminatory reason for the adverse employment action taken against the plaintiff. *Id.* Once the defendant articulates a legitimate, non-discriminatory reason, the ultimate burden reverts to the plaintiff to demonstrate an issue of material fact as to whether the proffered reason is pretextual. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993) (citation omitted). Pretext can be established if the plaintiff shows either "that a discriminatory reason more likely motivated the employer or ... that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 256, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981) (citation omitted). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

In this case, Plaintiff claims to have direct and circumstantial evidence that Defendant violated her rights under the ADEA by: (1) failing to accommodate her work-related injury because of her age; and (2) terminating her employment because of her age. The court will address each allegation in turn.

### 1. Failure to Accommodate

Plaintiff's first theory of recovery is that Defendant discriminated against her in the terms and conditions of her employment by failing to accommodate her alleged physical limitations after her August 1998 injury. Plaintiff claims that Defendant should have: (1) allowed her to use a lighter mop to complete her mopping duties; (2) assigned someone else to mop for her; or (3) reassigned her to another job that she could have physically performed. According to Plaintiff, Defendant failed to provide the accommodations because of Plaintiff's age.

As an initial matter, the court questions whether Plaintiff's failure to accommodate claim is cognizable under the ADEA. Most importantly, the crux of the claim revolves around Defendant's purportedly inadequate response to Plaintiff's alleged physical limitations in the wake of her August 1998 injury. At its essence, the claim sounds in disability discrimination law. For whatever reason, however, Plaintiff chose not to pursue her remedies under the Americans with Disabilities Act ("ADA"), a statute which, unlike the ADEA, provides a specific cause of action for an employer's failure to reasonably accommodate a qualified employee with a disability. See 42 U.S.C. § 12112(b)(5) (prohibiting the failure to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability ... unless [the employer] can demonstrate that the accommodation would impose an undue hardship on the operation of the business of [the employer]"). Absent a statutory mandate such as that provided for in the ADA, an employer does not typically have a duty to accommodate an employee simply because the employee wants an accommodation or believes that he or she deserves one. Here, Plaintiff believes that Defendant should have accommodated her injury, yet because she filed suit only under the ADEA, she has provided the court with no authority to find that Defendant owed her any such duty. In essence, Plaintiff asks the court to bypass the legal determination of

whether Defendant had the duty—a determination that in this case would appear to derive entirely from the ADA—and simply assume that the obligation existed as a term or condition of Plaintiff's employment and that Defendant breached it. Because the court cannot make such assumptions, it concludes that Plaintiff's ADEA failure to accommodate claim is not cognizable in this case. Accordingly, the court grants summary judgment to Defendant on Plaintiff's ADEA failure to accommodate claim on that basis.

■ Even if the court were to hold that Plaintiff's claim was cognizable under the ADEA, the claim still cannot survive summary judgment under either a direct evidence or a McDonnell Douglas analysis. First, Plaintiff contends that she had direct evidence of age discrimination by virtue of Mr. Pope asking Plaintiff on the day after her discharge, "Why don't you check into your Social Security benefits?" Mr. Pope's question to Plaintiff falls woefully short of meeting the direct evidence standard that discrimination be proved "without inference or presumption." See *Shorter*, 188 F.3d at 1207 (citations omitted). In fact, the question is so ambiguous that it fails to even raise an inference of age discrimination. See *Stone*, 210 F.3d at 1140 (quoting *Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994) (further citation omitted)) (stating that ambiguous comments are generally too abstract to support an inference of age discrimination). For this reason, the court holds that Plaintiff has failed to present direct evidence of age discrimination with respect to her failure to accommodate claim.

Because Plaintiff has no direct evidence of discrimination, the court analyzes Plaintiff's claim under the McDonnell Douglas burden-shifting framework. To establish a prima facie case of discrimination for failure to accommodate, a plaintiff must show

that: (1) she belongs to a protected class; (2) she was qualified for the accommodations that she sought; and (3) she was denied the accommodations under circumstances giving rise to an inference of discrimination. See *Tate v. Bd. of County Comm'rs*, No. 00–2115–GTV, 2001 WL 418025, at *2 (D.Kan. Apr. 9, 2001) (citing *Kendrick v. Penske Transp. Servs., Inc.*, 220 F.3d 1220, 1227 n. 6 (10th Cir.2000)) (establishing elements of prima facie case for disparate treatment claim). Although the court has serious concerns about Plaintiff's ability to satisfy the second and third elements of her prima facie case, it will assume for purposes of this opinion that Plaintiff has established a prima facie case.

■ Defendant has articulated two primary reasons for failing to accommodate Plaintiff in this case. First, Defendant states that it did not concede to Plaintiff's request that others complete her mopping duties because it did not view that request as reasonable. Second, Defendant states that it did not concede to Plaintiff's requests to use a lighter mop or be reassigned to another position because it did not believe that those requests were feasible in light of Plaintiff's physical limitations. The court finds that Defendant has met its burden to articulate legitimate, non-discriminatory reasons for failing to accommodate Plaintiff.

Plaintiff argues that she has presented several pieces of circumstantial evidence that satisfy her burden to demonstrate a genuine issue of material fact as to whether Defendant's proffered reasons are pretextual. First, Plaintiff claims that Mr. Pope's question to her about checking into her Social Security benefits is evidence of pretext. As the court previously noted, Mr. Pope's question is too ambiguous to raise an inference of age discrimination. See *Stone*, 210 F.3d at 1140 (citation omitted). Thus, Mr. Pope's question fails to

create a genuine issue of material fact regarding pretext.

Second, Plaintiff contends that Defendant had a custom and practice of reassigning employees who could no longer perform the essential functions of their jobs to other positions, and that Mr. Pope violated that policy when he failed to reassign Plaintiff. The uncontroverted evidence in this case indicates that Mr. Pope and Plaintiff both pondered potential reassignments at the time of Plaintiff's discharge, but that neither individual could come up with a position that fit both Plaintiff's physical limitations and her level of experience. Plaintiff now claims that there were nine "entry-level" positions open during the relevant time period to which she could have been reassigned with her level of experience. However, Plaintiff provides no competent evidence that she could physically perform any of the entry-level jobs, and Plaintiff's subjective opinion regarding her qualifications for those other positions is insufficient to create a genuine issue of material fact regarding pretext. See, *e.g.*, *White v. York Int'l Corp.*, 45 F.3d 357, 362 (10th Cir.1995) (stating that the plaintiff's "subjective opinion that he could perform various other jobs" was insufficient to defeat summary judgment on an ADA failure to accommodate claim).

Third, Plaintiff argues that summary judgment must be denied under the precedent set by *Reeves v. Sanderson Plumbing Products, Inc.* because, according to Plaintiff, Defendant's proffered reason for not assigning Plaintiff's mopping duties to someone else is false. Specifically, Plaintiff argues that Defendant's statement that it was unreasonable to assign Plaintiff's mopping duties to someone else is false in light of the fact that Defendant permitted others to complete the task for several months before discharging Plaintiff. However, Defendant's initial acquiescence to the performance of Plaintiff's mopping

duties by other employees does not make false its ultimate determination that it was unreasonable to continue to have other employees perform those duties. In essence, Plaintiff's argument does not challenge the veracity of Defendant's reason for not reassigning the mopping duties as much as it questions Defendant's business judgment. As such, it is insufficient to create a genuine issue of material fact regarding pretext. See *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir.1998) (citation omitted) (stating that an employer's articulated reasons for an adverse employment action against an employee are not converted into pretext simply because the business judgment of the decision may later be questioned).

Fourth, Plaintiff also argues that summary judgment must be denied under Reeves because Defendant's proffered reason for not allowing Plaintiff to use a lighter mop is also allegedly false. Plaintiff states in her summary judgment opposition that "[i]n regard to Mr. Pope's refusal to allow the plaintiff to use a lighter mop, the jury could reasonably find that the plaintiff did, in fact, request this accommodation during the meeting on January 20, 1998." Plaintiff seems to misunderstand the proof required to establish pretext in this instance. Viewing the evidence in the light most favorable to Plaintiff, the court, as it must, assumes that Plaintiff requested to use a lighter mop during the January 20, 1998 meeting. Plaintiff must then produce evidence rebutting Defendant's proffered reason for not allowing her to use the lighter mop— i.e., that she was physically unable to do so. Other than her own conclusory statements that she believes that she could use a lighter mop in this case, Plaintiff has produced no such evidence. In fact, Plaintiff's admission in her deposition that she was unable to use a lighter mop at home during the relevant time period directly

belies her contention that she could have used a lighter mop to complete her duties at work. Accordingly, Plaintiff's evidence is insufficient to create a genuine issue of material fact regarding pretext.

Finally, Plaintiff argues that summary judgment must be denied under Reeves because Defendant's proffered reasons for failing to reassign her to a new position at the time of her discharge are also allegedly false. Specifically, Plaintiff claims that Defendant's statement that Plaintiff lacked the experience and physical capabilities to perform any other jobs at Defendant's facility is false in light of the fact that there were nine open "entry-level" positions at the time that Plaintiff believes she could perform. As the court has previously discussed, Plaintiff has produced no competent evidence to show that she was physically capable of performing any of the nine entry-level jobs she references, and her subjective opinion regarding her qualifications for those positions is insufficient to create a genuine issue of material fact regarding pretext. See *White,* 45 F.3d at 362.

In sum, the court holds that Plaintiff has failed to present any genuine issues of material fact to show that Defendant's articulated reasons for failing to accommodate Plaintiff were pretext for age discrimination. In fact, the court finds no evidence whatsoever in the record that Defendant's failure to accommodate Plaintiff in this case was in any manner related to Plaintiff's age. For these reasons, the court grants summary judgment to Defendant on Plaintiff's ADEA failure to accommodate claim.

### 2. Wrongful Discharge

Plaintiff's second theory of recovery is that Defendant wrongfully terminated her employment because of her age. As was the case with her failure to accommodate claim, Plaintiff contends that she has direct evidence of age discrimination with respect to her discharge by virtue of Mr. Pope asking Plaintiff on the day after the termination of her employment, "Why don't you check into your Social Security benefits?" For the reasons previously discussed, the court does not find Mr. Pope's question to present even an inference of age discrimination in this case, much less direct evidence of age discrimination. See *Stone,* 210 F.3d at 1140 (citation omitted).

■■■ Because Plaintiff has no direct evidence of discrimination, the court analyzes Plaintiff's claim under the McDonnell Douglas burden-shifting framework. To establish a prima facie case of wrongful discharge, a plaintiff must show that: (1) she belongs to a protected class; (2) she was qualified for her job; (3) despite her qualifications, she was discharged; and (4) the job was not eliminated after her discharge. *Munoz v. St. Mary–Corwin Hosp.,* 221 F.3d 1160, 1165 (10th Cir.2000) (quoting *Perry v. Woodward,* 199 F.3d 1126, 1135 (10th Cir.1999)). "[T]he prima facie case requires 'evidence adequate to create an inference that an employment decision was based on a[n] [illegal] discriminatory criterion....'" *O'Connor v. Consol. Coin Caterers Corp.,* 517 U.S. 308, 312–13, 116 S.Ct. 1307, 134 L.Ed.2d 433 (1996) (quoting *Teamsters v. United States,* 431 U.S. 324, 358, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) (emphasis added)).

■■■ Defendant argues that Plaintiff cannot establish a prima facie case because Plaintiff was replaced by an employee who was one year older than Plaintiff.[2] In O'Connor, the Supreme Court noted that

---

**2.** Defendant also disputes that Plaintiff can demonstrate that she was qualified for her job. Rather than focusing on Plaintiff's qualifications within the prima facie case context, however, Defendant addresses the issue in its arguments justifying its legitimate, non-discriminatory reasons for discharging Plaintiff.

the inference of unlawful discrimination necessary to establish a prima facie case "cannot be drawn from the replacement of one worker with another worker insignificantly younger." *Id.* at 313, 116 S.Ct. 1307; see also *Munoz*, 221 F.3d at 1166 (finding that an age discrimination plaintiff who was replaced by someone only two years his junior failed to establish a prima facie case since the difference in ages was minimal). Here, Plaintiff's replacement, Laverne Deay, was one year Plaintiff's senior. Thus, under the precedent set in O'Connor, Plaintiff has failed to demonstrate the inference of unlawful discrimination necessary to establish a prima facie case.

Plaintiff argues, however, that she has presented other types of evidence sufficient to give rise to an inference of discriminatory discharge for purposes of her prima facie case. First, Plaintiff claims that she has produced evidence that younger workers who suffered work-related injuries in 1998 were, unlike Plaintiff, accommodated and not discharged. Unfortunately, Plaintiff fails to provide any specific evidence demonstrating that the unnamed younger employees to whom she refers were similarly situated to Plaintiff in terms of injuries, positions, supervisors or available accommodations, if any. Plaintiff's production of such generic and conclusory evidence regarding the alleged treatment of younger employees is insufficient to give rise to an inference of discriminatory discharge. See *Jones v. Denver Post Corp.*, 203 F.3d 748, 756 (10th Cir.2000). Plaintiff also argues that age discrimination can be inferred from Mr. Pope's alleged violation of company policy in failing to reassign Plaintiff to another position at the time of her discharge when there were nine "entry level" positions open, and from Mr. Pope's question to Plaintiff about Social Security benefits. The court has previously rejected both pieces of evidence as providing an infer-

ence of age discrimination and likewise rejects them here. In sum, the court concludes that Plaintiff has failed to present evidence sufficient to establish a prima facie case of discriminatory discharge on the basis of her age.

▇ Even if Plaintiff could establish a prima facie case, Defendant has proffered legitimate, non-discriminatory reasons for Plaintiff's discharge. According to Defendant, it terminated Plaintiff's employment because Plaintiff would not, or could not, perform all of her duties as a janitor, and neither Plaintiff nor Defendant could identify any other permanent jobs at Defendant's Lawrence facility for which Plaintiff was qualified. The court finds that Defendant has met its burden.

In an attempt to satisfy her ultimate burden of demonstrating pretext, Plaintiff points to evidence that the court has already determined fails to give rise to an inference of unlawful discrimination or raise a genuine issue of material fact regarding pretext. Specifically, Plaintiff again references: (1) Mr. Pope's question to Plaintiff about Social Security benefits; (2) Mr. Pope's alleged violation of company policy in failing to reassign Plaintiff to another position; (3) the alleged falsity of Mr. Pope's reason for not allowing Plaintiff to use a lighter mop; and (4) the alleged falsity of Mr. Pope's reasons for failing to reassign Plaintiff to another position in light of the fact that nine "entry-level" positions were open at the time of Plaintiff's discharge. Because each of these arguments has already been rejected, the court holds that Plaintiff has failed to present any genuine issues of material fact to show that Defendant's articulated reasons for discharging Plaintiff were pretext for age discrimination. As was the case with Plaintiff's failure to accommodate claim, the court finds no evidence whatsoever that Defendant's termination of Plaintiff's

employment was in any manner related to Plaintiff's age. For these reasons, the court grants summary judgment to Defendant on Plaintiff's ADEA wrongful discharge claim.

### B. FMLA Claim

Plaintiff's final theory of recovery is that Defendant interfered with Plaintiff's FMLA rights by failing to provide notice of her right to take leave under the FMLA. Defendant advances two arguments in support of its motion for summary judgment on this claim. First, Defendant contends that Plaintiff's claim is barred by the FMLA's two year statute of limitations. Second, Defendant argues that the uncontroverted facts demonstrate that it did not interfere with any of Plaintiff's substantive rights under the FMLA. The court will address each of Defendant's arguments in turn.

■ A plaintiff bringing a claim for interference of rights under the FMLA must typically file suit "not later than 2 years after the date of the last event constituting the alleged violation ...." 29 U.S.C. § 2617(c)(1). In the case of willful violations of the FMLA, a plaintiff must file suit "within 3 years of the date of the last event constituting the alleged violation ...." Id. § 2617(c)(2). Here, Plaintiff alleges that Defendant willfully violated the FMLA by failing to notify her of her potential right to take FMLA leave at the time of her discharge on January 21, 1999.[3] Because Plaintiff filed suit in this case on December 27, 2000, the court concludes that Plaintiff's claim is not barred by either the two or the three year statutes of limitation under the FMLA.[4]

■ Having concluded that Plaintiff's claim is not barred on statute of limitations grounds, the court moves to Defendant's remaining argument that the uncontroverted facts demonstrate that Defendant did not interfere with any of Plaintiff's substantive rights under the FMLA. The FMLA provides in relevant part that "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12 month period for one or more of the following: ... (D) Because of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1)(D). The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under [the FMLA]." Id. § 2615(a)(1). Regulations promulgated by the Department of Labor require that an employee provide at least verbal notice to the employer of his or her desire to take FMLA-qualifying leave. 29 C.F.R. § 825.302(a), (c) (2001); see also Goodwin–Haulmark v. Menninger Clinic, Inc., 76 F.Supp.2d

---

3. In her response brief, Plaintiff explicitly limits her interference claim in this case to the FMLA notice she believes she should have received on January 21, 1999. She does not argue that Defendant interfered with her rights under the FMLA by failing to provide notice of potential coverage under the statute for the forty days of leave that she took after her injury in August 1998. Accordingly, to the extent that Plaintiff ever intended to assert an FMLA interference claim for Defendant's actions prior to January 21, 1999, the court deems that claim abandoned. See Artes–Roy v. City of Aspen, 31 F.3d 958, 960 n. 1 (10th Cir.1994).

4. In an apparent attempt to overcome the difficulty imposed by Plaintiff's focus on January 21, 1999, as the only date that an alleged FMLA violation occurred, Defendant argues in its reply brief that the court should find that the limitations period began to run shortly after Plaintiff's injury in August 1998. However, other than citing an inapplicable Code of Federal Regulations section, Defendant provides the court with no authority which would allow it to find that the statute of limitations began running on the earlier date.

1235, 1241 (D.Kan.1999) (citing §§ 825.302(a) and 825.302(c)). When requesting leave, the employee need not expressly assert his or her rights under the FMLA or even mention the FMLA so long as he or she provides the employer with sufficient information to determine that the FMLA might be invoked. Id. § 825.302(c); see also *Goodwin–Haulmark*, 76 F.Supp.2d at 1241 (citing § 825.302(c)). Once the employer is on notice that an employee might be eligible for FMLA benefits, the employer has a duty to notify the employee that the FMLA might apply. Id. § 825.208(a); see also *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 997 (10th Cir.2001) (citing § 825.208(a)).

In this case, Plaintiff complains that Defendant's failure to notify her of her potential eligibility for FMLA benefits at the time of her discharge on January 21, 1999 interfered with her rights under the statute. To support her claim, Plaintiff submitted an affidavit with her summary judgment papers contending that had Defendant notified her on January 21, 1999 that she could take up to twelve weeks of FMLA-covered leave, she would have taken the leave instead of being discharged.

▉ The court finds that Plaintiff has failed to present any genuine issues of material fact to show that she was entitled to the protections of the FMLA on January 21, 1999. Specifically, Plaintiff testified in deposition that she did not desire to take any more unpaid leave than the forty days that she had already taken. Plaintiff also testified in deposition that she did not plan to take any days off in January 1999. Most importantly, the court can find no evidence in the record that Plaintiff actually requested or gave Defendant any other indication that she wanted to take leave on January 21, 1999. Given Plaintiff's deposition testimony, coupled with the absence of evidence that Plaintiff indicated that she

wanted to take leave, the court finds that Defendant's obligation to notify Plaintiff of potential coverage under the FMLA was never invoked on January 21, 1999. See *Neide v. Grand Court Lifestyles, Inc.*, 38 F.Supp.2d 938, 948–50 (D.Kan.1999) (granting summary judgment to defendant on plaintiff's FMLA interference claim in part because there was no evidence in the record that plaintiff ever indicated the need for leave). Plaintiff's affidavit fails to establish that she indicated a desire to take leave on January 21, 1999 and is contrary to her deposition testimony that she did not want to take more leave. As such, the court finds that Plaintiff's affidavit is merely an attempt to create a sham fact issue and is, therefore, insufficient to preclude summary judgment. See *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986). Because Plaintiff has failed to present any genuine issues of material fact to show that Defendant interfered with any of her rights under the FMLA, the court grants summary judgment to Defendant on Plaintiff's FMLA claim.

IT IS, THEREFORE, BY THE COURT ORDERED that Defendant's motion for summary judgment (Doc. 56) is granted.

The case is closed.

Copies of this order shall be transmitted to counsel of record for the parties.

**IT IS SO ORDERED.**