**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAR 2 2005**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JANET G. HOWARD,

      Plaintiff-Appellant,

v.

THE GARAGE DOOR GROUP, INC.,
an Amarr Company,

      Defendant-Appellee.

No. 02-3163
(D.C. No. 00-2580 -GTV)
(D.Kansas)

**ORDER AND JUDGMENT**[*]

Before **HARTZ, HOLLOWAY** and **McKAY**, Circuit Judges.

This case is an appeal from a summary judgment in an employment

discrimination case. *See Memorandum and Order, Howard v. Garage Door*

*Group, Inc.* 197 F. Supp. 2d 1297 (D. Kan. 2002). For the reasons detailed

below, we conclude that the Plaintiff failed to establish a prima facie case of a

violation of either the Age Discrimination in Employment Act, ("ADEA") 29

U.S.C. §§ 621 *et seq.*, or the Family and Medical Leave Act ("FMLA") 29 U.S.C.

§§ 2601 *et seq.* Accordingly, we affirm the district court's grant of summary

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. This court
generally disfavors the citation of orders and judgments; nevertheless, an order
and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

judgment for the Defendant.

# I

## *Procedural History*

The Plaintiff, Janet Howard, was fired from her job as a janitor for Defendant Garage Door Group, Inc. Howard filed suit against the Garage Door Group in the United States District Court for the District of Kansas, alleging that her termination violated the ADEA and the FMLA. Because these claims arose under federal statutes, the district court's jurisdiction was predicated on 28 U.S.C. §1331. On April 5, 2002, the district court granted Defendant's motion for summary judgment as to both the ADEA and FMLA claims. On May 6, 2002, Plaintiff filed a timely notice of appeal pursuant to Fed.R.App.Pro 4(a)(1). This court has jurisdiction over this appeal pursuant to 28 U.S.C. §1291.

# II

## *Statement of Facts*

Plaintiff Janet Howard was hired by Defendant Garage Door Group, Inc. in April of 1995 at the age of 59 as an assembly line worker. Several months later, Howard was reassigned to a janitorial position for health reasons. In August of 1998, Howard was injured on the job and, as a result, took a total of 40 days of unpaid leave.

When Howard returned to the job, she was assigned temporary light duty

for two to three weeks during which her mopping duties were assumed by other employees. In November of 1998, Howard received a medical release to return to normal duty with the restriction that she not lift more then twenty pounds. Despite this release, Howard refused to reassume her mopping duties. Eventually several of Howard's supervisors informed her that her continued refusal to mop would result in her termination.

On January 20, 1999, Howard met with her immediate supervisors and Mr. Pope, the director of manufacturing services for the Defendant. At that meeting Howard was again informed that she must resume her mopping or be terminated. In response, Howard stated she was physically unable to do so as the industrial mops usually utilized by the janitors were too heavy. Howard suggested that she be allowed to either use a lighter mop or have her mopping duties permanently assigned to another person. According to Howard, Pope rejected both suggestions but agreed that the following day he would discuss reassigning Howard to another position.

At the subsequent meeting, on January 21, 1999, no suitable position for Howard was identified. As a result, Pope decided to fire Howard, who was then 63 years old. On February 1, 1999, the Defendant hired Howard's replacement, who was 64 years old. Howard then sued, claiming her treatment by the Defendant was in violation of the ADEA and the FMLA. The district court

granted summary judgment for the Defendant on all counts. Howard now appeals.

## II

*Discussion*

A grant of summary judgment by the district court is reviewed de novo. *Simms v. Oklahoma*, 165 F.3d 1321, 1326 (10th Cir. 1999). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). When determining whether judgment as a matter of law is appropriate, "we view the evidence and draw reasonable inferences therefrom in the light most favorable to the nonmoving party." *Simms*, 165 F.3d at 1326.

## A

*ADEA claims*

The ADEA prohibits an employer from engaging in employment practices that "discriminate against any individual because of such individual's age." 29 U.S.C. § 623(b) (2004). A claim of age discrimination under the ADEA can be proven by either direct or circumstantial evidence. *Stone v. Autolive ASP, Inc.*, 210 F.3d 1132, 1136 (10th Cir. 2000). "A plaintiff proves discrimination through direct evidence by establishing proof of an existing policy which itself constitutes

discrimination." *Id.* (citation and quotation marks omitted). In all other cases, the plaintiff seeks to prove discrimination through circumstantial evidence. *See, e.g., Danville v. Regional Lab Corp.*, 292 F.3d 1246, 1249 (10th Cir. 2002) ("Circumstantial evidence allows the jury to draw a reasonable inference that discrimination occurred.").

Such a claim can survive summary judgment only where the plaintiff has presented sufficient evidence to show there is a genuine issue of material fact pertaining to whether the plaintiff's age actually motivated the allegedly discriminatory conduct. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 141 (2000); Fed. R. Civ. P. 56(c). In determining whether the circumstantial evidence presented by the plaintiff in a given case is sufficient to establish a genuine issue of material fact, the Supreme Court has directed the application of the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973).[1]

The *McDonnell Douglas* framework comprises three burden shifting steps. Initially, the burden rests with the plaintiff to establish a prima facie case of

---

[1]The *McDonnell Douglas* burden shifting framework is applicable only as to summary judgment. *Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 744 (10th Cir. 1991) (holding that once there has been a full trial on the merits, the *McDonnell Douglas* framework "drops out" and there remains only a "single overarching issue" of whether the "adverse employment action was taken against" the plaintiff because of his or her protected status).

discrimination.  *Id.* at 802.  If the plaintiff has established a prima facie case, the burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason" for its employment action.  *Id.*  Finally, if the defendant articulates a nondiscriminatory reason, then the burden shifts to the plaintiff to show that the proffered reason is merely a pretext for discrimination.  *Id.* at 804.  Where the parties have satisfied their respective burdens under the *McDonnell Douglas* framework, summary judgment is ordinarily inappropriate.  *Reeves*, 530 U.S. at 148.

Here Howard has proffered the following evidence of discrimination: Written and verbal comments were made by Pope that Howard should "check into her Social Security benefits."  Pope commented about checking the availability of nine "entry level jobs" to which Howard could have been but was not reassigned.  There was also reference to the feasibility of allowing Howard to either have someone else assume her mopping duties or allowing her to use a lighter mop.  This evidence is circumstantial and does not prove an "existing policy which itself constitutes discrimination."  *Stone*, 210 F.3d at 1136.  Accordingly, the question whether summary judgment was appropriate in Howard's case must be answered using the three-step burden shifting framework of *McDonnell Douglas*.  *Danville,* 292 F.3d at 1249.

This evidence, Howard argues, supports a finding of age discrimination in

two ways.  First, she says that the Defendant had an informal policy of accommodating workers who were injured on the job but Defendant did not give Howard the benefit of that policy because of her age by either allowing her to use a lighter mop, reassigning to someone else her mopping duties, or reassigning her to another job.  Second, Howard argues that she was ultimately fired because of her age.  These arguments, however, are merely two sides of the same coin and unnecessarily bifurcate what is essentially a single claim of alleged age discrimination: that Howard was fired because of her age.

Howard's first theory of discrimination is that she was denied a customary term of her employment when the Defendant failed to follow its informal custom of accommodating workers injured on the job.  The actual injury, however, that Howard suffered as a result of this violation was her termination.  In other words, this is not a case where the injury is the violation of a term of employment itself, e.g., where the plaintiff is denied vacation time customarily given to all employees as part of the terms of their employment but denied to older workers, *Finnegan v. Trans World Airlines*, 967 F.2d 1161, 1162 (7th Cir. 1992), but rather a case where the employee was fired on grounds that violated the terms of his or her employment.  Therefore, the essence of Howard's claim is that she was fired because of her age and her two theories coalesce into one.  That is not to say, however, that Howard's allegations that the Defendant failed to give her the

benefit of its informal policy of accommodating injured workers are irrelevant to our analysis. Rather, this theory is properly analyzed under the third part of the *McDonnell Douglas* burden shifting framework.

If we assume that Howard has satisfied the first part of the *McDonnell Douglas* framework and established a prima facie case of age discrimination in her termination, the burden would then shift to the Defendant to articulate a non-discriminatory justification for its decision to terminate Howard's employment. In this case, the Defendant's proffered justification is that Howard was fired because she was unable to perform her duties as janitor. The burden would then shift back to Howard to show this justification is a pretext. She could satisfy this burden by showing the duties she was asked to perform were not necessary functions of her position, i.e., the duties could have been reassigned to someone else, or that she could in fact have performed her duties, i.e., she could mop if allowed to use a lighter mop. Therefore, her assertions that the Defendant failed to give her the benefit of its policy of accommodating workers is not an independent theory of liability, but rather a rebuttal to the Defendant's assertion that Howard was fired because she could not perform the necessary duties of her job.

This is essentially how the district court analyzed Howard's claim when it granted the Defendant summary judgment. The district court assumed that

Howard had established a prima facie case of age discrimination. The judge found, however, that the Defendant had articulated a nondiscriminatory reason for its employment actions and that Howard had not advanced sufficient evidence to show this reason to be a pretext. Accordingly, the district court concluded that Howard had failed to satisfy her burden under the third step of the *McDonnell Douglas* framework and, therefore, her ADEA claim could not survive summary judgment.

We, however, do not need to delve so deeply into the *McDonnell Douglas* analysis to affirm the grant of summary judgment for the Defendants because we find Howard has failed to establish a prima facie case of age discrimination. As noted above, the first step of *McDonnell Douglas* analysis requires the plaintiff to establish a prima facie case of discrimination. 411 U.S. at 802. To establish a prima facie case of age discrimination, the plaintiff must show: "(1) that plaintiff belongs to a protected class; (2) that he suffered an adverse employment action; and (3) that the adverse employment action occurred under circumstances giving rise to an inference of discrimination." *Hysten v. Burlington Northern & Santa Fe Railroad*, 296 F.3d 1177, 1181 (10th Cir. 2002). "The real question . . . is whether a plaintiff has shown actions taken by the employer from which one can infer, if such actions remain unexplained, that it is more likely than not that such actions were based on a discriminatory criterion illegal under the Act." *Id.*

(internal quotation marks omitted).[2]

Howard points to two pieces of evidence in support of her prima facie case of discrimination: the comment by Pope to "check into her Social Security benefits," and also more favorable treatment of similarly situated employees, i.e., other younger employees were accommodated after suffering workplace injuries. Neither of these, however, is sufficient to establish "circumstances giving rise to an inference of discrimination."

Pope's comments to Howard to "check into her Social Security benefits" is insufficient to raise an inference of discrimination for two reasons. First, the comment was made after the decision was reached to terminate Howard. Appellant App. at 94. Thus, Howard failed to show the requisite nexus between the comment and the Defendant's decision to terminate her employment. *Cone v. Longmont United Hospital Ass'n*, 14 F.3d 526, 531 (10th Cir. 1994). These facts are distinguishable from *Danville v. Regional Lab Corp.*, 292 F.3d 1246, 1251

---

[2]We have held that the fourth element of the prima facie case of age discrimination is that the position the plaintiff held or sought was filled "by a younger person." *McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1128 (10th Cir. 1998). However, "[c]ollapsing the four-part prima facie case of *McDonnell Douglas* into a three-part test may occasionally be helpful when addressing discrimination claims that either do not fall into any of the traditional categories, e.g. hiring or discharge or present unusual circumstances." *Kendrick v. Penske Transportation Services, Inc.*, 220 F.3d 1220, 1227 n.6 (10th Cir. 2000). We give Howard the benefit of a liberal interpretation of the elements of a prima facie case of age discrimination.

(10th Cir. 2002), where we held an analogous comment to be sufficient when it was made during the meeting where the challenged employment action was taken. Second, the comment is "too abstract . . . to support a finding of age discrimination[.]" *Id.* It is unclear whether Pope was even referring to Social Security retirement benefits at all; the context surrounding his comments suggest he could just as easily have been referring to Social Security *disability* benefits.[3] In any event, Howard has not produced any other evidence that her termination was related to her potential eligibility for such benefits. In sum, Pope's comments are too isolated, too unrelated, and too ambiguous "to show discriminatory animus." *Cone*, 14 F.3d at 531.

Similarly, Howard's assertion that other younger employees were accommodated after suffering workplace injuries is insufficient to support an inference of discrimination. In support of this assertion, Howard proffers only the testimony of Laurence Randel who testified that he had seen some employees "moved around because they could not do the job they were on," Appellant App. at 67, and employment records that show that of 72 employees who suffered

---

[3] Pope made the comment "Why don't you check into your Social Security benefits," on the day that Howard came back to pick up her termination letter. Appellant Br. at 7, 17. In that letter, Pope also wrote: "I am sure your attorney can help you with applying for Social Security benefits, and I will be happy to assist you with the Amarr LTD [Long Term Disability] plan." Appellant App. at 100, 101-02.

workplace injuries, only two were discharged, *id.* at 84-89. This evidence, however, is insufficient to show age discrimination because it fails to "eliminat[e] nondiscriminatory explanations for the disparate treatment by showing disparate treatment between comparable individuals." *Fallis v. Kerr-McGee Corp.*, 944 F.2d 743, 746 (10th Cir. 1991).

Evidence tending to show disparate treatment by an employer toward a protected class is relevant only if it based upon "comparative analysis of similarly situated individuals." *Cone*, 14 F.3d at 532. Here Howard presents no details on who Randel observed being "moved around." Similarly, Howard presents no details on the 70 employees who suffered workplace injuries but were not fired. Specifically, Howard does not present evidence as to what injuries those individuals may or may not have suffered, what qualifications they had, what jobs they held, or what age they were.

Therefore, Howard's evidence fails to establish that similarly situated younger employees were treated differently from her treatment. In other words, this evidence fails to establish "circumstances giving rise to an inference of discrimination." Accordingly, Howard has failed to establish even a prima facie case of age discrimination and summary judgment for the Defendant on Howard's ADEA claim was appropriate.

**B**

*The FMLA claim*

"The Family and Medical Leave Act authorizes qualified employees to take leave from their jobs in certain circumstances." *Brockman v. Wyoming Dep't of Family Servs.*, 342 F.3d 1159, 1164 (10th Cir. 2003); 29 U.S.C. § 2612 (2004). Moreover, "the FMLA prohibits an employer from interfering with the exercise or attempt to exercise any right provided by the FMLA." *Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 997 n.11 (10th Cir. 2001). In this case, Howard alleges that her rights under the FMLA were violated when the Defendant failed to provide her with notice of her right to take leave under the FMLA when she was fired. It is uncontested, however, that Howard received a summary of her FMLA rights in her employee handbook. Appellee's Supp. App. at 12. Therefore, Howard is not alleging that the Defendant failed to fulfill the FMLA's notice requirement, which obligates employers to "post and keep posted, . . . excerpts from, or summaries of, the pertinent provisions of [the FMLA] and information pertaining to the filing of a charge." 29 U.S.C. § 2619. Rather, Howard alleges that her FMLA rights were interfered with, in violation of 29 U.S.C. § 2615(a)(1), when she was not specifically informed of her right to take FMLA leave.

An employer, however, is obligated under § 2615(a) to specifically inform an employee of his or her right to FMLA leave only when the "employer is *on*

-13-

*notice* that the employee might qualify for FMLA benefits . . . ." *Tate*, 268 F.3d at 997 (emphasis added). At a minimum, this requires that the employer be on notice that the employee wants leave. This notice can arise from verbal notification from the employee, *see, e.g.,* 29 C.F.R. § 825.302(c) ("An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave.") It could also be inferred from an employer's own act of placing the employee on sick leave, *Tate*, 268 F.3d at 998 ("Given Plaintiff's allegation that Defendant placed him on sick leave, Plaintiff need not allege that he provided Defendant with notice of his rights under the FMLA").

Here the record indicates that Howard, at the time she claims the Defendant should have notified her of her rights under the FMLA, did not want to take any time off of work. Appellee's Supp. App. at 11-12. Howard has subsequently stated, by affidavit attached to her memorandum in opposition to the motion for summary judgment, that she "was never offered, or spoken to about leave pursuant to the [FMLA]." Appellant App. at 81. Further, she claims: "had I been offered the 12 weeks' unpaid leave pursuant to the FMLA, on or about January 20, 1999, I would have taken such leave to assist in my rehabilitation so that I could return to work rather than be terminated." *Id*.

The district court found that this affidavit contradicted Howard's earlier

deposition testimony and further that "the court can find no evidence in the record that Plaintiff actually requested or gave Defendant any other indication that she wanted to take leave on January 21, 1999." *Howard*, 197 F. Supp.2d at 1309. Thus the court concluded that Howard's affidavit was merely an attempt to create a "sham fact issue" and was therefore insufficient to preclude summary judgment. *Id* (citing *Franks v. Nimmo*, 796 F.2d 1230, 1237 (10th Cir. 1986).

We have held that to determine whether an affidavit seeks to create a sham fact issue, we should consider three factors, "whether: (1) the affiant was cross-examined during his earlier testimony; (2) the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence; and (3) the earlier testimony reflects confusion which the affidavit attempts to explain." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 973 (10th Cir. 2001). Howard argues that her affidavit "does not contradict her deposition testimony, since she was never specifically asked in her deposition whether she would have taken the 12 weeks of unpaid leave under the FMLA, if it had been offered to her." Appellant's Reply Br. at 11. Howard therefore argues that her affidavit attempts to "explain" the "confusion" arising out of her earlier testimony.

Even if we accept Howard's affidavit, it does not demonstrate that her

employer was "on notice" that she desired or was even eligible[4] for such leave. Hoffman did take a total of 40 non-consecutive days off work from the date of her injury to the date of her termination. Appellee App. at 11 (Howard Dep. at 37). But at the time of her termination, she was not on leave, nor had she asked for leave. *Id* at 11-12. Defendant was under no obligation to specifically inform Howard of her right to FMLA leave and did not interfere with Howard's rights when it failed to do so. Accordingly, summary judgment for the Defendant on this claim is appropriate.

## III

*Conclusion*

Accordingly, we hold that Howard has failed to establish a prima facie case of age discrimination and therefore AFFIRM the grant of summary judgment for the Defendant as to the ADEA claim. We also hold that Howard has failed to establish that her rights under the FMLA were violated and therefore AFFIRM the

---

[4] Whether Howard was eligible for FMLA protections was not addressed by the district court or either party, and we need not address it here. We note, though, that the FMLA affords employees the right to take time off "[b]ecause of a serious health condition that makes the employee unable to perform the functions of such employee." 29 U.S.C. §2612(a)(1)(D). "Serious health condition" has been defined as either inpatient care or three consecutive days of incapacity followed by continuing treatment by a health care provider. 29 C.F.R. §825.114(a). In this case, Howard took a total of 40 non-consecutive days off, but there is no evidence either of inpatient treatment or of any period of three consecutive days off followed by continuing treatment.

grant of summary judgment for the Defendant as to that claim.

ENTERED FOR THE COURT


William J. Holloway, Jr.
Circuit Judge