**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 11 2000**

**PATRICK FISHER**
**Clerk**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

JAMES STONE,

      Plaintiff - Appellant,

v.

AUTOLIV ASP, INC., formerly
known as Morton International, Inc.,

      Defendant - Appellee.

No. 98-4074

**Appeal from the United States District Court**
**for the District of Utah**
**(D.C. No. 96-CV-6-S)**

Brad C. Smith, Stevenson & Smith, P.C., Ogden, Utah, for the appellant.

Michele Mitchell (Scott M. Petersen and Warren Patten with her on the briefs),
Fabian & Clendenin, P.C., Salt Lake City, Utah, for the appellee.

Before **BRORBY** and **LUCERO**, Circuit Judges, and **WEST**[*], District Judge.

**LUCERO**, Circuit Judge.

---

[*] Honorable Lee R. West, District Judge of the Western District of
Oklahoma, sitting by designation.

This case arises from a reduction in force ("RIF") instituted in 1995 by defendant Autoliv ASP, Inc., a manufacturer of airbags. As a result of the RIF, James M. Stone was terminated after eighteen years of working for Autoliv. Stone sued Autoliv for discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §§ 621-634. The district court granted Autoliv summary judgment, from which Stone appeals.

Our determination on review turns on (1) whether Stone has established a prima facie case of age discrimination by demonstrating that there were positions at Autoliv similar to his in which younger workers were placed; and (2) whether the evidence Stone presented—primarily a comment made by his supervisor, Charles H. Seebock, who allegedly stated that "at [Stone's] age, it would be difficult to train for another position" or "difficult to find a new job," (II J.A. at 24, 48)—is sufficient to show directly or circumstantially that age was a determining factor in the decision to terminate him. Exercising jurisdiction pursuant to 28 U.S.C. § 1291, we affirm. Although we disagree with the district court's finding that Stone has not established a prima facie case of age discrimination because he has pointed to a younger employee placed in a similar position, we nevertheless affirm the district court's grant of summary judgment for Autoliv because Seebock's single comment is neither direct evidence of

discrimination, nor sufficient to establish that the RIF was proffered as a pretext for discrimination.[1]

**I**

From March 1977, until his termination on June 5, 1995, Stone worked for Autoliv or its predecessor companies, most recently as Manager of Advanced Strategic Planning. Immediately prior to holding that position, Stone was the Manager of European Programs. During the course of his employment, he consistently received above-average performance evaluations.

Rumors speculating that "[t]here would be some type of reorganization" within the company began to circulate in early 1995, when Frank Musone became Autoliv's new company president. (II J.A. at 19-21.) As part of the reorganization process, Seebock prepared a "tentative list" on May 15, 1995, of approximately twenty-five employees "without a slot," including Stone. (Id. at 340). Seebock's list noted that it was "subject to change based on plant changes." (Id.) At a staff meeting Stone attended the next day, Seebock reminded his managers that lists of positions were due. Surmising that these lists were related to the reorganization, Stone met with Seebock to inquire about his future with the company. At this meeting, Seebock stated he did not know about the future of

---

[1] We may affirm the district court's dismissal of an action on a different ground if the record is sufficient to allow conclusions of law. See United States v. Sandoval, 29 F.3d 537, 542 n.6 (10th Cir. 1994).

Stone's position with the company because he had not discussed it with Musone yet, but that "at [Stone's] age, it would be difficult to train for another position" or "difficult to find a new job." (Id. at 24, 48). This comment constitutes the primary evidence Stone presents to support his allegation of age discrimination. Prior to this conversation, Seebock had never mentioned Stone's age in the eight years they had worked together. Although Stone is not sure if Seebock knew his age at the time of the ageist comment, he asserts that no reasonable person could mistake him for being younger than forty.

On June 2 or 3, 1995, Stone learned that his position would be eliminated effective June 5, 1995, due to company-wide restructuring. Prior to Stone's termination, Seebock attempted to locate another position for him, calling Stone's former supervisor and the vice presidents of human resources and engineering; none of the three could place Stone. Stone does not dispute this fact, but asserts that Seebock's actions were taken too late to allow him to be considered for other available positions. Stone, uncertain whether his position would be eliminated by the anticipated RIF, made no efforts to investigate other available positions with Autoliv, but did send a resume to Autoliv in July 1995, expressing interest in returning to work. According to Stone, Seebock alone made the termination decision, but the record belies that assertion. Overall, as a result of the

-4-

reorganization, 324 Autoliv employees were terminated. At the time of the termination, Stone was almost fifty-three years old.

Stone contends there were other positions in which Autoliv could have placed him following the elimination of his strategic planning position. Employees, at least one of whom was younger than Stone, were selected for new "plant manager" positions. In addition, the position of program manager for General Motors, one allegedly analogous to Stone's position in European Programs held prior to his strategic planning job, became available during the restructuring, but was given to another, younger employee. Stone also alleges that a younger worker was appointed to the newly created position of "Manager, Process Redefinition." (I J.A. at 76).

## II

Summary judgment should be granted when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In reviewing the district court's decision to grant summary judgment, we view the evidence "in the light most favorable to the party opposing summary judgment." Kaul v. Stephan, 83 F.3d 1208, 1212 (10th Cir. 1996) (quoting Wolf v. Prudential Ins. Co., 150 F.3d 793, 796 (10th Cir. 1995)). The substantive law at issue determines which facts are material in a given case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "Only disputes

over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Id.

## A

The ADEA states that it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). "A plaintiff who seeks to prove that an employer discriminated against him or her can use either direct or circumstantial evidence." Ingels v. Thiokol Corp., 42 F.3d 616, 620 (10th Cir. 1994); see also Jones v. Unisys Corp., 54 F.3d 624, 630 (10th Cir. 1995) (noting that "we have adapted for ADEA cases" the indirect methods of proof of McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-04 (1973)). A plaintiff proves discrimination through direct evidence by establishing proof of "an existing policy which itself constitutes discrimination." Ramsey v. City & County of Denver, 907 F.2d 1004, 1008 (10th Cir. 1990) (citing Trans World Airlines, Inc. v. Thurston, 469 U.S. 111, 121 (1984)).

"Statements which on their face are expressions of personal opinion, however, can only support an inference of discrimination if the trier of fact finds the inference reasonable, and so constitute only circumstantial or indirect evidence of discrimination against the plaintiff." Tomsic v. State Farm Mut.

Auto. Ins. Co., 85 F.3d 1472, 1477 (10th Cir. 1996) (citing Ramsey, 907 F.2d at 1008). Stone argues that Seebock's comment cannot be "ignored as merely 'personal opinion' but take[s] on the character of a statement of policy, particularly given Seebock's high position within Defendant's structure." (Appellant's Br. at 28.) However inappropriate this statement may be, it is "not direct evidence of causation on the employment decision." Ramsey, 907 F.2d at 1008 (holding that a division director's "feelings about women being better suited to some jobs than others" were circumstantial or indirect and not direct evidence of discrimination); see, e.g., Perry v. Woodward, 199 F.3d 1126, 1134-35 (10th Cir. 1999) (concluding that racist statements regarding hiring barriers were not direct evidence of discriminatory motivation for termination); Tomsic, 85 F.3d at 1477, 1478 (characterizing as indirect evidence a supervisor's comments that a plaintiff could be expected to lack motivation because of her husband's income and another plaintiff would have marital problems because her husband would be uncomfortable earning less than her); EEOC v. Wiltel, Inc., 81 F.3d 1508, 1513-14 (10th Cir. 1996) (characterizing as indirect evidence a comment that an interviewer did not "like" the plaintiff because she was "into" her religion); Heim v. Utah, 8 F.3d 1541, 1546-47 (10th Cir. 1993) (holding that one supervisor's single statement that he hated having women in the office, unconnected to the personnel action at issue, was not direct evidence of a discriminatory policy); Furr

v. AT & T Techs., Inc., 824 F.2d 1537, 1547, 1549 (10th Cir. 1987) (holding repeated statements by managers that plaintiffs were "too damned old," were too old to learn new technologies or to be in management positions, and did not have a future with the company because of age were not direct evidence of a causal relationship between discrimination and failure to promote). But see Greene v. Safeway Stores, Inc., 98 F.3d 554, 560 (10th Cir. 1996) (noting that a plaintiff may prove a direct evidence case "by presenting direct or circumstantial evidence that age was a determining factor in his discharge") (quoting Lucas v. Dover, 857 F.2d 1397, 1400 (10th Cir. 1988)). At most, such statements provide circumstantial evidence of discriminatory intent because they "require the trier of fact to infer that discrimination was a motivating cause of an employment decision." Wiltel, 81 F.3d at 1514 (citing Heim, 8 F.3d at 1547; Ramsey, 907 F.2d at 1008; Furr, 824 F.2d at 1547, 1549). Here, Seebock's comment reflects his personal opinion, not an existing company policy, and therefore it does not constitute direct evidence of discrimination.

## B

Upon concluding that Stone has not presented direct evidence, we must turn to the indirect method of proof established by McDonnell Douglas. See, e.g., Wiltel, 81 F.3d at 1514-15. This burden-shifting framework first requires plaintiffs to prove a prima facie case. See McDonnell Douglas, 411 U.S. at 802.

To establish a prima facie case of age discrimination in the RIF context, a claimant affected by a RIF must prove: (1) the claimant is within the protected age group; (2) he or she was doing satisfactory work; (3) the claimant was discharged despite the adequacy of his or her work; and (4) there is some evidence the employer intended to discriminate against the claimant in reaching its RIF decision. See Ingels, 42 F.3d at 621. The fourth element may be established "through circumstantial evidence that the plaintiff was treated less favorably than younger employees during the [RIF]." Id. (quoting Lucas, 857 F.2d at 1400).

Establishing a prima facie case of age discrimination under the ADEA creates a presumption of discriminatory intent that the defendant may rebut by asserting a facially nondiscriminatory reason for the employee's termination. Id. The plaintiff may then resist summary judgment if she can present evidence that the proffered reason was pretextual, "i.e. unworthy of belief," see Randle v. City of Aurora, 69 F.3d 441, 451 (10th Cir. 1995), or "otherwise introduces evidence of illegal discriminatory motive," id. at 453.

Autoliv does not dispute the first three elements required for the showing of a prima facie case for the purposes of its summary judgment motion. Rather, it contends Stone does not meet the fourth factor of the prima facie test because he

cannot establish that he was treated less favorably than younger employees during the RIF.

Stone argues younger employees were placed, respectively, in a position that he previously held in the company and in other positions for which he was qualified, and that Autoliv "refused to even consider bumping the less senior person." (Appellant's Br. at 20.) Thus, he claims there were two adverse employment actions: losing his job and not having the opportunity to compete for positions during the reorganization. Stone asserts many other employees knew of the reorganization while he did not.

The standards applicable to the fourth element of a prima facie case of discrimination in the context of a RIF are not fully defined. See Beaird v. Seagate Tech., Inc., 145 F.3d 1159, 1166 (10th Cir. 1998). Although "[e]vidence that an employer fired qualified older employees but retained younger ones in similar positions is sufficient to create a rebuttable presumption of discriminatory intent[,]" Branson v. Price River Coal Co., 853 F.2d 768, 771 (10th Cir. 1988), questions such as "whether a single younger employee retained in a similar position is sufficient to establish the fourth element, or how similar a position must be in order to be relevant under Branson," remain unanswered. Beaird, 145 F.3d at 1166.

As explained in Beaird, we look to the purpose of the McDonnell Douglas

framework to determine how to apply the framework to fit the unique nature of

RIF cases:

> [A] prima facie case simply eliminates the most common
> nondiscriminatory reasons for plaintiff's rejection, namely lack of
> qualifications or the absence of a vacancy in the job sought.  More
> specifically, the second element of the McDonnell Douglas prima
> facie case—that the plaintiff be qualified—and the fourth
> element—that the position remained open—perform this elimination
> role.
> . . . .
> Thus, the fourth element of Branson should be understood to parallel
> the fourth element of McDonnell Douglas by eliminating lack of
> vacancy as a legitimate nondiscriminatory motive for the employment
> decision.  Once the first three elements have been satisfied, that
> elimination is all that is required to give rise to a prima facie case.

Id. at 1166-67 (internal quotations and citations omitted).

Examining the factual circumstances in Branson demonstrates the practical

application of the McDonnell Douglas framework in RIF cases.  In Branson, a

plaintiff was terminated pursuant to a RIF from her position as accounts payable

supervisor.  See Branson, 853 F.2d at 769-70.  The RIF directive required the

accounting department to eliminate one of its four employees.  See id. at 770.  In

the accounting department, the other three positions—general manager, cost

accountant, and payroll supervisor—were not identical to plaintiff's eliminated

position.  See id.  The other plaintiff, a traffic supervisor and administrative

assistant who was terminated because her job duties were eliminated, asserted that

"she was equally or more qualified for several other positions in her department that were instead retained by younger employees." Id. at 769. Emphasizing that "reduction in force cases present exigencies not present in other employment discrimination cases" and that "these exigencies are best analyzed at the stage where the employer puts on evidence of a nondiscriminatory reason for the discharge," the Branson court held "[e]vidence that an employer fired qualified older employees but retained younger ones in similar positions" is sufficient to conclude that both plaintiffs established a prima facie case. Id. at 771 (citation omitted). That the former traffic supervisor might have needed training to assume another position, id. at 772, was not relevant to determining whether she had established a prima facie case of age discrimination because she did not need to show that "she [was] as or more qualified than employees who [were] retained." Beaird, 145 F.3d at 1168 n.5 (citing Branson, 853 F.2d at 771 n.6). To establish a prima facie case, it is only necessary for a plaintiff to "point to circumstances that show that the employer could have retained her, but chose instead to retain a younger employee," because after a RIF, it is impossible for plaintiff to "point to a continuing vacancy because her position has been eliminated." Id. at 1167.

Therefore, in order for Stone to establish a prima facie case of age discrimination, he must establish that Autoliv retained or placed younger employees in similar positions. To do so, Stone points to three "similar

positions" allegedly filled by younger employees during the reorganization: program manager for General Motors, plant manager positions, and an entirely new management position, "Manager, Process Redefinition."[2] ( I J.A. at 76.)

Various Autoliv personnel involved in organizing the RIF, including Stone's supervisor, Seebock, testified that the General Motors position was similar to the work Stone had done at Autoliv in recent years and he could be a candidate for that position. Seebock testified that there was a "lot of similarity" between the program manager for General Motors and the responsibilities Stone had in the European market. (II J.A. at 183.) He also stated that based on Stone's experience and his "work as European program manager for a number of years," he "felt [Stone] could have possibly filled an engineering or program management position." (Id. at 191.)

The prima facie case was "'never intended to be rigid, mechanized, or ritualistic,'" United States Postal Serv. Bd. of Governors v. Aikens, 460 U.S. 711, 715 (1983) (quoting Furnco Constr. Corp. v. Waters, 438 U.S. 567, 577 (1978)),

---

[2] Manager of European Programs, Stone's second most recent position with Autoliv, was not eliminated during the RIF and is asserted as a similar position in which a younger employee was retained. Although Roger Tea, vice-president for human resources, testified that Stone "would have been a candidate to be going back to European programs" had there been a vacancy (I J.A. at 238), Stone fails to present evidence that the employee retained in this position, Steve Goch, was younger. Even if Stone had presented evidence that Goch was younger, it does not affect the outcome of the case because Stone already established a prima facie case of age discrimination based on the General Motors position.

"particularly in an age discrimination case," MacDonald v. Eastern Wyo. Mental

Health Ctr., 941 F.2d 1115, 1121 (10th Cir. 1991) (citing Pace v. Southern Ry.

Sys., 701 F.2d 1383, 1387 (11th Cir. 1983)).  Our similarity analysis is

complicated by the fact that Stone's duty in his most recent position as Manager

of Advanced Strategic Planning was to perform long-range planning generally

and, as no one reported to him, the position existed essentially in a single-person

department.  The General Motors job for which Stone was allegedly qualified

involves skills from his past position as Manager of European Programs and is a

job for which his supervisor, Seebock, likewise thought he was qualified.  Thus,

the fact that a younger employee was placed in this position satisfies the fourth

factor of a prima facie case of age discrimination.[3]

---

[3]  There is no evidence that the plant manager positions or the newly created job of "Manager, Process Redefinition" were similar to Stone's most recent position as Manager of Advanced Strategic Planning or his prior position as Manager of European Programs.  Rather, the evidence indicates that they were quite different.  The plant managers were new positions and were not similar to any positions previously existing in the company; prior to their creation there was "no one person at the plantsite [sic] that was responsible for everything," and therefore it encompassed duties previously held by "manufacturing, Materiel people, human resource people; all of those reporting back to the respective functional vice presidents."  (I J.A. at 184.)  The "Manager, Process Redefinition" (id. at 76), was responsible for the "prototype manufacturing process"—the prototypes being the "samples [Autoliv was] manufacturing to be sold."  (II J.A. at 321.)  Stone has presented no evidence indicating that these newly created positions were analogous to his prior jobs.

Autoliv responds by citing company-wide statistics. It is undisputed that 324 employees were terminated around the same time as Stone as a result of the RIF. More importantly, according to Autoliv, is the undisputed fact that the net effect of the RIF was to actually increase, albeit slightly, the percentage of workers at Autoliv who were age forty or over.[4] Autoliv argues that this negates Stone's prima facie case. While a "balanced workforce cannot immunize an employer from liability for specific acts of discrimination," Furnco, 438 U.S. at 579, statistics concerning employees terminated in a RIF are probative to the extent they suggest that older employees were not treated less favorably than younger employees, see Lucas, 857 F.2d at 1403 (finding that statistics concerning all supervisory employees terminated in the RIF did not assist plaintiffs argument because "what evidentiary value they have suggests that older employees were not treated unfavorably") (citations omitted). Such evidence, however, is more appropriately evaluated against the employer's proffered legitimate, nondiscriminatory reason for termination. See Branson, 853 F.2d at 769.

**C**

---

[4] Specifically, before the RIF 24.7% of employees were age 40 or over, compared to 24.8% after the RIF.

Having established a prima facie case under the ADEA, Stone benefits from a presumption of discriminatory intent that Autoliv may rebut by asserting a facially nondiscriminatory reason for the employee's termination. See, e.g., Ingels, 42 F.3d at 621. Here, for the purposes of summary judgment, Stone does not dispute that the RIF suffices for Autoliv's asserted facially nondiscriminatory reason for his termination. Once a defendant asserts a facially nondiscriminatory reason for the termination, "the presumption of discrimination established by the prima facie showing 'simply drops out of the picture,'" and the analysis shifts to the plaintiff's ultimate burden of showing that the defendant discriminated on the illegal basis of age. Id. (quoting St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 511 (1993)). A plaintiff may then resist summary judgment if he or she can present evidence that the proffered reason was pretextual, "i.e. unworthy of belief." Randle, 69 F.3d at 451. "Effective cross-examination, combined with the plaintiff's initial evidence, may be sufficient to effect this task." Roberts v. Roadway Express, Inc., 149 F.3d 1098, 1103 (10th Cir. 1998) (citations omitted); see also Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 255 n.10 (1981).

There are three common methods used to demonstrate pretext in the RIF context: (1) evidence that the termination of the employee is inconsistent with the employer's RIF criteria; (2) evidence that the employer's evaluation of the

employee was falsified to cause termination; or (3) "evidence that the RIF is more generally pretextual." Beaird, 145 F.3d at 1168. These methods do not foreclose the possibility of others. See id. at 1168 n.6. Stone relies on Seebock's alleged comment for purposes of establishing that the elimination of his position without transferring him to an open position was "generally pretextual." Id. at 1168.

At the crux of Stone's case is Seebock's comment that "at [Stone's] age, it would be difficult to train for another position" or "difficult to find a new job." (II J.A. at 24, 48.) This statement is best characterized as a "stray remark." See, e.g., McKnight v. Kimberly Clark Corp., 149 F.3d 1125, 1129 (10th Cir. 1998). As such it is insufficient to create a jury issue in an employment discrimination case. Age-related comments referring directly to the plaintiff can support an inference of age discrimination, but "isolated [or] ambiguous comments" may be, as here, too abstract to support such an inference. Cone v. Longmont United Hosp. Ass'n, 14 F.3d 526, 531 (10th Cir. 1994) (quoting Phelps v. Yale Sec., Inc., 986 F.2d 1020, 1025 (6th Cir. 1993)). The court in Cone further reasoned that "[i]solated comments, unrelated to the challenged action, are insufficient to show discriminatory animus in termination decisions." Id. (citing Leichihman v. Pickwick Int'l, 814 F.2d 1263, 1271 (8th Cir. 1987)). A plaintiff must demonstrate a nexus exists between the allegedly discriminatory statement and the company's termination decision, see id., and therefore "that age actually played a

role in the defendant's decisionmaking process and had a determinative influence on the outcome," Rea v. Martin Marietta Corp., 29 F.3d 1450, 1455 (10th Cir. 1994) (citing Hazen Paper Co. v. Biggins, 507 U.S. 604, 610 (1993)).

Our review of the record simply does not support Stone's position that there is more to his claim of pretext than this stray remark. Were there more evidence, or a stronger showing of nexus, Stone's claim of pretext might well rise to the level of a jury question, but with Seebock's remark standing alone our decision is foreordained. Stone relies on Tomsic, 85 F.3d at 1478, in an attempt to establish that Seebock's comment shows age was a determining factor in his termination. In Tomsic, however, the supervisor explicitly told one plaintiff she would not succeed in her training program and that she would lack incentive because her husband made too much money, while at the same time telling others that she would be fired. See id. at 1474-75, 1479. A permissible inference from these comments is that Tomsic's supervisor had preconceived notions premised on her gender regarding her possibilities for success with the company and ultimately terminated her based at least in part on his gender bias. See id. at 1479; see also Furr, 824 F.2d at 1547, 1549 (upholding finding of willful discrimination based in part on repeated statements by managers that the plaintiffs did not have a future with the company because they were "too damned old" and would be too old to learn new technologies or to be in management positions).

Here, in eight years of working with Seebock, Stone admits Seebock never made an age-related comment to him, and he is not even sure that Seebock knew his age. Stone concedes Seebock contacted three others within the company inquiring about openings for him, even though he contends these actions were taken too late to be helpful. With regard to placement in other positions in the company, Stone himself admits that, while other similar jobs were available, there was no position available that matched his skills and talents at the time of the RIF. (II J.A. at 37, 52-56); see Branson, 853 F.2d at 772 (holding that the plaintiff failed to establish pretext where, among other factors, the plaintiff "admit[ted] she would have required at least minimal training to assume any of the positions retained by younger employees"). Moreover, it is undisputed that 324 employees were terminated as a result of the RIF, slightly increasing the percentage of workers at Autoliv who were age forty or over. Although such statistics do not immunize Autoliv from liability, see Furnco, 438 U.S. at 579, they further undermine Stone's unsupported assertion that older employees were treated less favorably than younger employees in the RIF, see Lucas, 857 F.2d at 1403. The Tenth Circuit has established that a single age-related comment, even if made by a decisionmaker, may not be "sufficient to infer discriminatory intent." McKnight, 149 F.3d at 1129 (holding that the plaintiff failed to show pretext based solely on the comment of a supervisor at the time of termination stating that

"he [the supervisor] was not as old" as McKnight).  Thus, examining Seebock's comment in light of all of the evidence, we conclude it is insufficient for a reasonable jury to infer that age was a determining factor in the decision to terminate Stone.  Nor has Stone directed our attention to contradictory statements that would reasonably allow him to cast doubt onto Autoliv's explanation through cross-examination of company decisionmakers.  Cf. Roberts, 149 F.3d at 1103.

### III

Although Stone was able to demonstrate a prima facie case of age discrimination, he did not present evidence sufficient for a jury to conclude that Autoliv's reason for termination was pretextual.  The district court's grant of summary judgment is **AFFIRMED**.