F I L E D
United States Court of Appeals
Tenth Circuit

JAN 24 2005

PATRICK FISHER
Clerk

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

EARL GILKEY,

      Plaintiff-Appellant,

v.

SIEMENS ENERGY &
AUTOMATION, INC.,

      Defendant-Appellee.

No. 03-5205
(D.C. No. 02-CV-730-H)
(N.D. Okla.)

**ORDER AND JUDGMENT**   *

Before **KELLY** , **HARTZ** , and **TYMKOVICH** , Circuit Judges.

After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument.

Winford Earl Gilkey appeals the district court's grant of summary judgment in favor of his former employer, Siemens Energy and Automation, Inc., on his

---

*     This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

claims that Siemens discriminated against him because of his race and his age by eliminating his position in a reduction-in-force (RIF). "We review grants of summary judgment *de novo* to determine whether any genuine issue of material fact exists, viewing all evidence and any reasonable inferences that might be drawn therefrom in the light most favorable to the non-moving party." *Croy v. Cobe Labs., Inc.*, 345 F.3d 1199, 1201 (10th Cir. 2003). For the reasons discussed below, we affirm. [1]

Siemens manufactures gas chromatographs and mass spectrometers at a plant in Bartlesville, Oklahoma. Gilkey, a fifty-three-year-old African-American, handled Siemens' shipping duties in its Quality Assurance (QA) department at the facility. Teressa Grayson, an African-American two years older than Gilkey, handled receiving duties. Five other employees, Caucasians ranging in age from forty to fifty-three, were also assigned to the QA department. Only Gilkey and Grayson, however, had primary job duties focused on shipping or receiving. The other QA employees' primary job duties involved testing and evaluating incoming

---

[1] Gilkey argues that Siemens' supplemental appendix contains materials that were not presented to the district court and therefore cannot be considered by this court. Gilkey is correct that generally we do not consider materials not presented to the district court. *See, e.g., Lantec, Inc. v. Novell, Inc.*, 306 F.3d 1003, 1022 (10th Cir. 2002). The appellate record indicates that Mr. Snelson's affidavit was presented to the district court, but we cannot determine whether the district court had access to Siemens' other supplemental materials. Therefore, we have not considered such other materials in making our decision.

or outgoing products and materials. These jobs are technical in nature, requiring employees to inspect and to analyze materials from suppliers and to calibrate precision mechanical and electronic instrumentation so that Siemens' products comply with established standards. According to the record, Gilkey had not been trained to and was not qualified to perform these other duties.

In 2001, Siemens decided to reduce its workforce. Siemens consolidated its shipping and receiving functions, and it determined that Grayson, rather than Gilkey, would fill the combined position. Gilkey's employment was terminated June 22, 2001. Siemens did not terminate the employment of any other QA employee in the June 2001 RIF. [2]

Gilkey alleged that his layoff violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. (Title VII), and the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.* (ADEA) because only he and Grayson were considered for layoff. The district court granted Siemens' motion for summary judgment, holding that Gilkey had not established a *prima facie* case of discrimination. In addition, the district court noted that Gilkey could not show Siemens' legitimate non-discriminatory reason for laying him off was a pretext for illegal discrimination.

---

[2] Siemens, however, subsequently laid off another Caucasian QA employee.

-3-

A plaintiff alleging illegal discrimination in a RIF may use the burden-shifting formula of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), to survive a motion for summary judgment. *See Beaird v. Seagate Tech., Inc.*, 145 F.3d 1159, 1165-66 (10th Cir. 1998). Under this formula, once the plaintiff has established a *prima facie* case, the defendant must present a non-discriminatory reason for its action, and then the plaintiff must present evidence that the defendant's proffered reason is a pretext for discrimination. *Id.* at 1165. Here, to establish his *prima facie* case, Gilkey must prove: (1) he was in a protected class; (2) he was performing his work satisfactorily; (3) despite his satisfactory work, he was discharged; and (4) there was some evidence that Siemens' RIF decision involved intentional discrimination against him. *Id.* He can establish the fourth element through evidence that he lost his job while non-African-American or younger employees in similar positions kept their jobs. *Id.* at 1165, 1167 & n.4.

Because we find the fourth element dispositive, we assume for purposes of our decision that Gilkey has established the first three factors of his *prima facie* case. Gilkey, however, cannot establish a violation of the fourth factor, that he was treated less favorably than non-protected employees in similar positions. First, it is undisputed that Siemens retained Grayson, an African-American older than Gilkey, for the combined shipping/receiving position. Second, as to the

other five QA employees Siemens retained, the record shows that their primary functions were technical or specialized in nature and not susceptible to consolidation with the shipping/receiving functions. Accordingly, the district court correctly concluded that these positions were not similar or comparable to Gilkey's or Grayson's QA positions. [3] Thus, Siemens' decision to retain younger, Caucasian QA employees while terminating Gilkey's employment does not create an inference that Siemens intended to discriminate against Gilkey in the RIF because of his race or age. *See Stone v. Autoliv ASP, Inc.*, 210 F.3d 1132, 1138 (10th Cir. 2000) (holding that employee must point to younger employees retained in similar positions); *Beaird*, 145 F.3d at 1167-68 (examining similar positions); *Branson v. Price River Coal Co.*, 853 F.2d 768, 771 (10th Cir. 1988) (same).

In addition, the dissimilarity in the jobs performed under the aegis of the QA department satisfies Siemens' obligation to explain its creation of two groups of QA employees (one subject to potential layoff, and the other not) for purposes of the RIF. *See Bell v. AT&T*, 946 F.2d 1507, 1511 (10th Cir. 1991) ("In a Title VII case involving a reduction-in-force, the employer must assert a legitimate

---

[3] Gilkey argues that, because all of the QA employees were trained in shipping and receiving, all the QA positions are sufficiently similar and all QA employees should be compared to one another. The record indicates, however, that the other QA employees were trained in shipping and receiving as back-ups or for emergencies, and that their primary functions were distinct from Gilkey's and Grayson's.

justification for leaving certain employees out of the group susceptible to termination while including others."); *Beaird*, 145 F.3d at 1170-71 (same).

Although the record shows that Gilkey cannot satisfy *McDonnell Douglas's* fourth element, even if Gilkey had established a *prima facie* case, he has not shown that Siemens' legitimate non-discriminatory reason was a pretext for discrimination. Siemens submits that, of the QA positions, the shipping and receiving functions were most easily combined, and that Gilkey was not as qualified as Grayson to assume the combined shipping/receiving job. Because this rationale satisfies Siemens' burden of producing a non-discriminatory reason for its actions, the burden of showing pretext shifts to Gilkey.

"Pretext can be shown by 'such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'" *Morgan v. Hilti, Inc.*, 108 F.3d 1319, 1323 (10th Cir. 1997) (quoting *Olson v. Gen. Elec. Astrospace*, 101 F.3d 947, 951-52 (3d Cir. 1996)) (further quotations and citation omitted). In this RIF case, Gilkey can establish pretext by showing, among other methods, that: (1) his termination was not in accordance with the RIF criteria allegedly used; (2) his evaluation under the RIF criteria was falsified or manipulated; or (3) the RIF itself was

pretextual and the employer was not really reducing its workforce. *See Stone*, 210 F.3d at 1140; *Beaird*, 145 F.3d at 1168. However, "[an employer] may chose to conduct its RIF according to its preferred criteria of performance . . . and we will not disturb that exercise of defendant's business judgment." *Beaird*, 145 F.3d at 1169. *See also Lucas v. Dover Corp., Norris Div.*, 857 F.2d 1397, 1403-04 (10th Cir. 1988) ("This court will not second guess business decisions made by employers, in the absence of some evidence of impermissible motives.").

Gilkey argues that his termination was not in accordance with Siemens' RIF criteria because only he and Grayson were considered for the RIF. The record indicates, however, that Siemens' management considered the positions of each of the QA employees in determining which jobs to consolidate or eliminate, and then determined that the shipping and receiving positions could most easily be combined. Furthermore, Gilkey has pointed to nothing in the record to suggest he was qualified for the other QA positions. Since there is no evidence that Siemens' business judgment was so "idiosyncratic" or "questionable" as to allow a reasonable factfinder to find discrimination, *see Beaird*, 145 F.3d at 1169, Siemens's RIF decision was within its prerogative and does not constitute a showing of pretext.

Finally, Gilkey has made no showing that retaining Grayson, rather than himself, was pretext for discrimination. Grayson was African-American and older

-7-

than Gilkey, so Siemens' preference for her does not tend to show discrimination. Even if Siemens erred in determining that Grayson was a better choice to fill the combined position, an employer's mistaken, but non-discriminatory, reasoning does not suffice to show pretext. *See McKnight v. Kimberly Clark Corp.*, 149 F.3d 1125, 1129 (10th Cir. 1998). "It is the perception of the decision maker which is relevant, not plaintiff's perception of [him]self." *Branson*, 853 F.2d at 772.

Under these circumstances, "[t]here is simply no inference of foul play about [the employer's] choice," *Beaird*, 145 F.3d at 1169. The judgment of the district court is AFFIRMED.

Entered for the Court


Timothy M. Tymkovich
Circuit Judge