**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**March 24, 2010**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

DIANA LEWIS,

      Plaintiff-Appellant,

v.

D. R. HORTON, INC.,

      Defendant-Appellee.

Nos. 09-2032 & 09-2137

(D.C. No. 1:06-CV-00434-WPJ-ACT)
(D. N. Mex.)

**ORDER AND JUDGMENT**[*]

Before **HENRY,** Chief Judge**, HOLLOWAY,** and **BRISCOE**, Circuit Judges.


      In Case No. 09-2032, Plaintiff-Appellant Diana Lewis appeals the district

court's grant of summary judgment in favor of her former employer, Defendant-

Appellee D.R. Horton, Inc. ("Horton") on her claims of gender discrimination in

violation of the Equal Pay Act ("EPA") and Title VII. In Case No. 09-2137,

Lewis also appeals the district court's award of certain costs to Horton. We have

jurisdiction pursuant to 28 U.S.C. § 1291 and affirm.

---

[*] This order and judgment is not binding precedent, except under the
doctrines of law of the case, res judicata, and collateral estoppel. It may be cited,
however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th
Cir. R. 32.1.

**General Background and Case History**

In 1999, Lewis began working as an accounting manager in the New Mexico Division of Horton. Horton is a home-building company with numerous divisions in the United States, each with its own division president and management staff. From 2001 until the spring of 2005, Lewis held the title of Vice-President of Financial Operations/Division Controller in the New Mexico Division.

As Vice-President, Lewis was responsible for supervising the accounting department in the New Mexico Division. During that time, the accounting department consisted of "IT Systems, Human Resources Coordinator/Payroll, Accounts Payable, and Contracts." App. Vol. II at 333. In 2004, she hired an Accounts Payable Manager and an Assistant Controller, who helped with Horton's conversion to a new software system. However, Mark Ferguson, the New Mexico Division President, was not entirely supportive of Lewis's decision to hire an Assistant Controller. In addition to her supervisory duties, Lewis was responsible for preparing various reports, including the Five-Year Budget projections and Tract Pie, an analysis which was used to measure the cost of buildings, land, and projected profit. Beginning in December 2004, Lewis also prepared the Land Acquisition Funding Summary.

In 2004, the New Mexico Division added two new positions: a Chief Financial Officer (CFO) and a Senior Vice-President of Land. These positions

2

were created after Horton's corporate CEO insisted that each division upgrade its teams in anticipation of future growth. Ferguson interviewed three male candidates for the CFO position, including Dean Anderson. Anderson had twenty years of experience in the home-building industry, including six years of experience working as a CFO for two different home-building companies. At the time of the interview, Anderson was employed by a competitor of Horton's, and he was earning over $120,000 in base salary. After a period of negotiations, Ferguson hired Anderson as CFO, at a base salary of $120,000 per year, plus bonus. In 2006, Anderson's total compensation was $253,883. In 2004, Lewis's base salary was $56,000 per year, plus a bonus of $65,465.16.

Anderson started working as CFO for the New Mexico Division in March 2005. He assisted Ferguson with Horton's business operations, and he advised Ferguson regarding construction, marketing, cost, infrastructure, and long-term financial planning. Anderson also became responsible for the three reports that Lewis was previously responsible for preparing; these reports took approximately fifteen to twenty percent of his time. Lewis helped Anderson transition into his responsibility for preparing these projects. Except for the preparation of those reports, Lewis had the same job duties after Anderson was hired as she had before, including being responsible for accounting reporting and supervising the accounting staff. After Anderson was hired, Lewis's title changed from "Vice-President/Division Controller" to "Controller."

On April 25, 2005, Lewis received a bonus of $1,000. She asked Anderson why her bonus was much less than usual. The next day, Lewis met with Ferguson and Anderson, and she was offered a reassignment to the land department. On April 27, Ferguson wrote an e-mail to Lewis regarding her compensation in the land department after Lewis asked why she was not on the bonus plan[1] starting in January 2005. Ferguson told her that the bonus plan was always discretionary and only for specific fiscal years. He further explained that because Horton hired a CFO and she was no longer Vice-President/Division Controller, she would not be on the bonus program after the first quarter—October through December 2004. Later that same day, Ferguson wrote another e-mail to Lewis stating that because she did not want to be reassigned to the land department, the matter was "closed and off the table." App. Vol. II at 370. On April 28, Lewis submitted a letter of resignation. She stated:

> I find I have no other choice since my job has been threatened if I do not accept a much lower position as some sort of budget person in the land department. I also was notified on Tuesday, April 26, 2005, that I am no longer participating in the bonus program. Since I can only construe this to mean that I no longer retain my position as controller, I do hereby tender my resignation.

App. Vol. II at 373. The following day, Ferguson wrote an e-mail to Horton's

---

[1] Horton had two bonus plans: a general bonus pool and a written bonus plan. The written bonus plan was based on division performance and was subject to change from year to year at Ferguson's discretion. Lewis was on the written bonus plan for the last quarter of fiscal year 2001, fiscal years 2002, 2003, and 2004, and the first quarter of fiscal year 2005.

corporate account manager, stating: "We do not intend to replace the Controller position at this time and feel that we are appropriately staffed at this time." App. Vol. II at 375.

Lewis brought this action against Horton, alleging salary discrimination on the basis of sex in violation of the Equal Pay Act, 29 U.S.C. § 206(d)(1), and employment discrimination in violation of Title VII, 42 U.S.C. § 2000e-2. Horton subsequently filed a motion for summary judgment. The magistrate judge entered proposed findings and recommended that the district court grant Horton's motion for summary judgment on all claims. After Lewis filed various objections to the magistrate's report, the district court adopted the magistrate judge's recommendations and granted summary judgment for Horton.

Following the entry of summary judgment, Horton filed a motion with the clerk of the court to tax costs of certain depositions. Lewis objected, arguing that Horton had only submitted two depositions into evidence but was seeking costs for additional depositions. The clerk allowed the depositions, taxing costs of $5441.74 against Lewis and in favor of Horton.

Lewis sought review by the district court of the costs assessed, arguing that four depositions were inappropriately taxed as costs because they were not reasonably necessary to the litigation. She also contended that Horton was awarded $2112.65 in costs for the copy of Chris Frandsen's deposition transcript, when the invoice indicated that the copy of the transcript cost only $324.90. The

district court concluded that all of the depositions were reasonably necessary to the litigation because both parties used the depositions in their motions for summary judgment, and the district court found them necessary in its ruling. The district court then reviewed the $2112.65 costs for Frandsen's transcript and reduced the amount to $827.65 ($324.90 for actual transcripts and $502.75 for deposition exhibits); the district court excluded the remainder, which was for condensed transcripts, computerized transcripts, a video DVD, and shipping costs.

Lewis timely appealed the district court's grant of summary judgment and order taxing costs of depositions and deposition exhibits. We have consolidated these two appeals for disposition.

## Case No. 09-2032

Lewis appeals the district court's grant of summary judgment for Horton on her EPA and Title VII claims. We review a district court's grant of summary judgment de novo. Mickelson v. New York Life Ins. Co., 460 F.3d 1304, 1310 (10th Cir. 2006). Summary judgment is appropriate if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c).[2] "We view the evidence, and draw

_____

[2] The Federal Rules of Civil Procedure have been amended, effective December 1, 2009. Citations are to the version of the rules in effect at the time of the proceedings before the district court.

reasonable inferences therefrom, in the light most favorable to the nonmoving party." Mickelson, 460 F.3d at 1310.

As an initial matter, Horton contends that the firm waiver rule should bar this appeal because Lewis failed to make specific objections to the magistrate judge's recommendations. "This court has adopted a firm waiver rule under which a party who fails to make a timely objection to the magistrate judge's findings and recommendations waives appellate review of both factual and legal questions." Morales-Fernandez v. INS, 418 F.3d 1116, 1119 (10th Cir. 2005). Any objections "must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." United States v. 2121 E. 30th St., 73 F.3d 1057, 1060 (10th Cir. 1996). The firm waiver rule may be excused "when (1) a pro se litigant has not been informed of the time period for objecting and the consequences of failing to object, or when (2) the interests of justice require review." Morales-Fernandez, 418 F.3d at 1119 (internal quotation omitted).

After carefully reviewing the record, we conclude that Lewis has not waived appellate review. Lewis submitted ten pages of objections to the magistrate judge's factual and legal conclusions. These objections were both timely and "sufficiently specific to focus the district court's attention on the factual and legal issues that are truly in dispute . . . ." See 2121 E. 30th St., 73 F.3d at 1060. Thus, we turn to the merits of the issues presented on appeal.

## A. Equal Pay Act

Lewis contends that the pay disparity between Anderson and Lewis violated the Equal Pay Act. Pursuant to the EPA,

> [n]o employer . . . shall discriminate . . . between employees on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex . . . for equal work on jobs the performance of which requires equal skill, effort, and responsibility, and which are performed under similar working conditions, except where such payment is made pursuant to (I) a seniority system; (ii) a merit system; (iii) a system which measures earnings by quantity or quality of production; or (iv) a differential based on any other factor other than sex . . . .

29 U.S.C. § 206(d)(1).

There are two steps in our analysis of an EPA claim. "First, the plaintiff must establish a prima facie case of discrimination by demonstrating that employees of the opposite sex were paid differently for performing substantially equal work." Mickelson, 460 F.3d at 1311. If the plaintiff meets her prima facie case, "the burden of persuasion then shifts to the defendant to prove that the wage disparity was justified by one of four permissible reasons," including "disparity based on any factor other than sex." Id. (emphasis and quotation omitted). "[B]ecause the employer's burden in an EPA claim is one of ultimate persuasion, in order to prevail at the summary judgment stage, the employer must prove at least one affirmative defense so clearly that no rational jury could find to the contrary." Id. (quotation omitted).

To meet her prima facie case, Lewis must provide evidence that she "was

8

performing work which was substantially equal to that of employees of the opposite sex, taking into consideration the skills, duties, supervision, effort and responsibilities of the jobs." Id. at 1311 n.5. "We do not construe the 'equal work' requirement of the EPA broadly, and we have stated that failure to furnish equal pay for 'comparable work' or 'like jobs' is not actionable." Sprague v. Thorn Americas, Inc., 129 F.3d 1355, 1364 (10th Cir. 1997). At the same time, the jobs need not be identical, but rather, they must be "substantially equal." Ammons v. Zia Co., 448 F.2d 117, 120 (10th Cir. 1971) (quotation omitted).

Lewis has not met her prima facie case. Lewis contends that some of her former duties became Anderson's duties when he was hired as CFO. Lewis directs our attention to Anderson's testimony where he stated: "I took on a lot of responsibilities that were part of the responsibility of the CFO position that, prior to me starting, that [Lewis] was doing, yes." App. Vol. II at 461. This is insufficient to support a reasonable inference that she and Anderson performed equal work. Although Anderson became responsible for preparing the three reports that Lewis previously prepared, it is undisputed that those reports took only fifteen to twenty percent of Anderson's time. To satisfy her prima facie showing, there must be evidence that she performed substantially all of the duties of a higher-paid co-worker, and not simply that a higher-paid co-worker took over some of her job duties. See Miller v. Auto. Club of N.M., Inc., 420 F.3d 1098, 1119 (10th Cir. 2005) abrogated on other grounds by Burlington N. & Santa Fe

9

Ry. Co. v. White, 126 S. Ct. 2405 (2006) ("[T]he record makes clear that while Ms. Miller did perform some of the duties that were included in the newly created post, she did not perform all of those duties. She simply has not made a prima facie case that the jobs were substantially similar.").

Horton's regional CFO, Chris Frandsen, testified regarding the difference between the division CFO and controller positions as follows:

> [T]he controller is responsible for the accounting team and the personnel, the day to day activities and the things that they may do are often task-oriented reports. Monthly issues to handle with clos[ing] or review of budgets and things of that nature.
> Whereas, the division CFO role is primarily strategic being a business partner to the division president and handling forecasting and issues that are less concrete than what the controller may handle. It is more making estimates and assumptions and also trying to work within the division and bridging all the different departments to bring the data to the division president to help him make those [decisions].
> . . .
> Typically the controller becomes the person who has the longer list of tasks. Whereas, oftentimes the division CFO spends their time identifying needs within the division or helping to resolve those needs, once identified, or if the division president of the department is having issues with something that they are the person available to step in and strengthen the controls and fix the process, whether it be operation[al] or financial [in] nature.

App. Vol. I at 186.

Lewis contends that prior to Horton hiring Anderson, she met with the Division President "daily to discuss and address not only financial, accounting, and planning issues, but also operational issues involving construction, marketing,

10

land acquisition, and infrastructure." App. Vol. II at 330.[3]  However, there is no evidence in the record detailing any of these meetings, or how they compare to the CFO's responsibilities, as described above.  Without any details or specific facts, this general and vague statement is insufficient to create a triable fact regarding equal work.  See Piercy v. Maketa, 480 F.3d 1192, 1197–98 (10th Cir. 2007) ("When a party relies on affidavit evidence, it may be insufficient to create a triable fact if it is nonspecific or otherwise non-responsive, vague, conclusory, or self-serving.").

Lewis argues that "Horton did not put forth any competent evidence showing 'the full extent' of Dean Anderson's job duties."  Appellant's Br. at 19. However, as plaintiff she bears the burden of meeting her prima facie case.  See Sprague, 460 F.3d at 1364.  Although it may be difficult to provide evidence of the job duties and responsibilities of management-level employees, it is incumbent upon Lewis to produce evidence adequately detailing the jobs at issue. See Younts v. Fremont County, Iowa, 370 F.3d 748, 753 (8th Cir. 2004) (employer was entitled to summary judgment because "Plaintiffs have not produced evidence of [the higher-paid male employee's] actual job duties, the

---

[3] On appeal, Lewis also relies on the testimony of another Horton employee, Bill Allen, a former Vice-President/Division Controller in Tucson, who became a CFO, and testified that "in general the job did not change significantly." App. Vol. II at 477.  However, Lewis has not directed our attention to any evidence that Allen performed the same work as Lewis or as the CFO in the New Mexico Division.

11

skill, effort and responsibility associated with his job . . . or the working conditions under which [he] fulfills his job duties." (quotation omitted)). If the evidence is so deficient that we cannot adequately compare the jobs at issue, then Lewis has not met her prima facie case. See id.

We have found no evidence in the record that would allow a reasonable factfinder to conclude that Lewis and Anderson performed substantially equal work, and therefore, Lewis has failed to meet her prima facie showing. See Miller, 420 F.3d at 1119. Accordingly, Horton is entitled to summary judgment on Lewis's Equal Pay Act claim.[4]

## B. Title VII

The district court analyzed Lewis's Title VII claims as alleging pay discrimination, discriminatory demotion, and discriminatory discharge. When a plaintiff relies on circumstantial evidence to prove discrimination, we apply the familiar burden-shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under McDonnell Douglas, a plaintiff must first establish a prima facie showing of discrimination. Id. at 802. "If the plaintiff makes such a showing, the burden of production shifts to the [defendant] to state a legitimate, nondiscriminatory reason for its adverse employment action." Mickelson, 460

---

[4] Because we conclude that Lewis did not meet her prima facie case under her EPA claim, we do not address whether Horton is entitled to summary judgment on its affirmative defense.

12

F.3d at 1311 (quotation omitted). "If the [defendant] meets this burden, then summary judgment is warranted unless the [plaintiff] can show there is a genuine issue of material fact as to whether the proffered reasons are pretextual." Id. (quotation omitted).

Lewis contends that the district court erred in concluding that she failed to make her prima facie showing of her Title VII pay discrimination claim. In a Title VII pay discrimination claim, "a prima facie showing of discrimination consists of evidence that a female employee occupies a job similar to that of higher paid males."[5] Id. (quotation omitted). On appeal, Lewis simply repeats her arguments from her EPA claim. For the same reasons as discussed above, we conclude that Lewis has not met her prima facie showing that she and Anderson occupied similar jobs. Moreover, even if she had made her prima facie showing, she has not demonstrated that Horton's proffered justifications were merely pretextual, as discussed more fully below.

For purposes of this appeal, we assume that Lewis could meet her prima

[5] We note that Lewis did not bring a Title VII pay discrimination claim under County of Washington v. Gunther, 452 U.S. 161 (1981), where an employee in a unique position may bring a Title VII action even though there are no higher-paid, opposite-sex employees in an equal job. See Lloyd v. Phillips Bros., 25 F.3d 518, 525 (7th Cir. 1994) ("Even when jobs are not sufficiently similar to constitute 'equal work' under the [EPA], a Title VII claim for wage discrimination is not precluded."). Instead, Lewis argues on appeal that she performed work similar to Anderson. See Appellant's Br. at 28 ("A prima facie showing for 'pay discrimination' under Title VII consists of evidence that a female employee performed work similar to that of the higher paid male.").

13

facie showing for her claims of discriminatory demotion and discriminatory discharge.[6]  Horton has provided legitimate, nondiscriminatory reasons for its employment decisions: (1) Anderson was hired as CFO at a base salary of $120,000 because of negotiations and market conditions, as well as Anderson's prior salary, experience, and skills; and (2) the New Mexico Division was large enough to justify both a controller and a CFO.[7]

Lewis contends that these justifications are merely pretexts for discrimination.  Lewis can "demonstrate[] pretext by producing evidence of 'such weaknesses, implausibilies, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence and hence infer that the employer did not act for the asserted non-discriminatory reasons.'"  Jaramillo

---

[6] The district court analyzed Lewis's discriminatory demotion prima facie showing under the following framework: "that she was: (1) within a protected group, (2) adversely affected by defendant's employment decision, (3) qualified for the position at issue, (4) and that the job from which [s]he was demoted was not eliminated."  App. Vol. I at 579 (citing Jones v. Denver Post Corp., 203 F.3d 748, 753 (10th Cir. 2000)).  The district court analyzed Lewis's discriminatory discharge prima facie showing as follows: "(1) she belonged to a protected class; (2) she was qualified for the position; (3) she was discharged; and (4) the position was not eliminated after her discharge."  App. Vol. I at 574 (citing Adamson v. Multi Cmty. Diversified Servs. Inc., 514 F.3d 1136, 1150 (10th Cir. 2008)).  The parties do not challenge the prima facie frameworks employed by the district court.

[7] Horton also provided the justification that the CFO and controller were two different positions.  We understand this not as a nondiscriminatory justification, but rather, as repeating the argument that Lewis was not similarly situated to Anderson, i.e., that Lewis cannot meet her prima facie case.

14

v. Colo. Judicial Dep't, 427 F.3d 1303, 1308 (10th Cir. 2005) (per curiam) (quoting Morgan v. Hilti, Inc., 108 F.3d 1319, 1323 (10th Cir.1997)).  Here, the record does not support a reasonable inference that Horton's proffered justifications are unworthy of belief.

We begin with Horton's justification that its employment decisions were based on Anderson's experience and skills.  Lewis avers that this justification is a pretext for discrimination because she was just as qualified as Anderson, if not more so.  According to Lewis, she had been performing her job as Vice-President at Horton for four years, she had more experience with Sarbanes-Oxley reporting, and she trained Anderson to prepare the three reports.

When determining whether a proffered justification is pretextual, "[t]he relevant inquiry is not whether the employer's proffered reasons were wise, fair or correct, but whether [the employer] honestly believed those reasons and acted in good faith upon those beliefs." Rivera v. City and County of Denver, 365 F.3d 912, 924–25 (10th Cir. 2004) (alterations and quotation omitted).  This is because "[o]ur role is to prevent unlawful [employment] practices, not to act as a super personnel department that second guesses employers' business judgments." Simms v. Oklahoma ex rel. Dep't of Mental Health and Substance Abuse Servs., 165 F.3d 1321, 1330 (10th Cir. 1999) (quotation omitted).  Accordingly, "[w]e must proceed with caution when considering the relative merits of individual employees." Jaramillo, 427 F.3d at 1308 (quotation omitted).

15

Generally, "an employee's own opinions about [her] qualifications do not give rise to a material factual dispute." Simms, 165 F.3d at 1329 (10th Cir. 1999) (quotation and alterations omitted). Instead, Lewis "must come forward with facts showing an overwhelming disparity in qualifications" in order to support an inference of pretext regarding Horton's justification that Anderson had superior experience and qualifications. See Johnson v. Weld County, Colo., 594 F.3d 1202, 1211 (10th Cir. 2010) (quotation omitted). According to the undisputed evidence in the record, Anderson had nearly twice as much experience in the home-building industry as Lewis: Anderson had been working in the industry for approximately twenty years, whereas Lewis had been working in the industry for ten years. Further, Anderson had six years of experience as a CFO. Thus, based on the evidence presented, Lewis does not come close to establishing an "overwhelming" disparity in qualifications, i.e., that she was more qualified than Anderson.

Additionally, Lewis argues that Anderson's salary was not based on negotiations or market conditions, but that Ferguson "paid Dean Anderson what he wanted to pay him." Appellant's Br. at 33. However, the record does not support Lewis's interpretation of Ferguson's testimony. Ferguson explicitly described how Anderson's salary was based on their negotiations:

> At the time that I interviewed Mr. Anderson in January of 2005, Mr. Anderson wanted more than I wanted to provide for [his] salary, and coming to the $120,000 figure was a negotiated process. I ended up

16

with a figure for Mr. Anderson'[s] salary based on our negotiations, market conditions, what Mr. Anderson made previously, and Mr. Anderson's work history and skills. . . . Because of Mr. Anderson's salary demands, I in fact negotiated over a significant period of time from Mr. Anderson's first job interview to when Mr. Anderson was first hired because Mr. Anderson wanted more than I wanted to pay.

App. Vol. I at 277–78.  In his deposition, Ferguson also testified as follows:

I knew that the general range that [Anderson] was at, I believe, was in the low 100s.  In fact, he might have been like in the 130s or 140s where he was currently at, on his salary with some other bonus potential.
That was well above what I had in mind, and I believe it was thirty days or more between the time we first met before an offer was ever extended, because he was out of the range of where I wanted to be on that position.

App. Vol. II at 440.  Thus, Ferguson's testimony supports Horton's proffered justification.  There is no evidence in the record to contradict the suggestion that the hiring decision was based on negotiations and market conditions.

Further, Lewis contends that Horton's justifications are post hoc rationalizations because Horton never raised these arguments with the EEOC. However, Lewis's contention is clearly contradicted by the record.  Horton's position statement to the EEOC stated that Horton

was looking for someone with a Master's degree or equivalent; or four to ten years related experience and/or training in a CFO position; or equivalent combination of education and experience. . . . In order to garner Mr. Anderson, who was at the time gainfully employed with a competitor of Horton, Mr. Ferguson had to engage in extensive negotiations with Mr. Anderson over compensation, resulting in a salaried position of $120,000 a year.

App. Vol. II at 395.

17

Based on the undisputed evidence in the record, Anderson had considerably more experience in the home-building industry than Lewis, including previous experience as a CFO, and his salary was a result of extensive negotiations and his prior salary. Thus, the record does not support a reasonable inference that Horton's justification was merely pretext for discrimination.

"[A]s a general rule, an employee must proffer evidence that shows each of the employer's justifications are pretextual."[8] Tyler v. RE/MAX Mountain States, Inc., 232 F.3d 808, 814 (10th Cir. 2000). Because the record does not support a reasonable inference that this justification was pretextual, we may end our analysis here. See id. Nonetheless, turning to Horton's justification that the New Mexico Division could support both a controller and CFO, there is no evidence suggesting that this justification was pretext.

According to Lewis, this justification is unworthy of belief because it is contradicted by Ferguson's statement in an e-mail that he was "having a hard time

_____

[8] There are exceptions to this general rule, but none of them apply to the case at bar. See Jaramillo, 427 F.3d at 1310 ("(1) the reasons are so intertwined that a showing of pretext as to one raises a genuine question whether the remaining reason is valid; (2) the pretextual character of one explanation is so fishy and suspicious that a jury could find that the employer (or its decisionmaker) lacks all credibility, (3) the employer offers a plethora of reasons, and the plaintiff raises substantial doubt about a number of them; (4) the plaintiff discredits each of the employer's objective explanations, leaving only subjective reasons to justify its decision; or (5) the employer has changed its explanation under circumstances that suggest dishonesty or bad faith.") (internal citations and quotations omitted)).

18

justifying the need for a CFO, Controller, Assistant Controller, and an Accounts Payable Manager, all overseeing very few staff workers." App. Vol. II at 370. This statement does not suggest that Horton's justification is unworthy of belief. In context, Ferguson's statements regarding staffing involved his concern that Lewis's department was overstaffed. Later in that e-mail, Ferguson stated: "When you [Lewis] wanted to hire . . . an [Accounts Payable] Manager, I questioned why the AP management could not be handled by the . . . Assistant Controller, out of my expressed concern that you were building too much staff below you while knowing that I intended to place a CFO above you." App. Vol. II at 370. The fact that Ferguson believed that <u>four</u> managers was overstaffing the department does not contradict the statement that the department could support <u>two</u> managers.

Additionally, Lewis argues that there is other evidence of discriminatory intent. Lewis contends that in the New Mexico Division the base pay for male vice-presidents ranged from $75,000 to $145,000, and the base pay for female vice-presidents ranged from $56,000 to $65,000. Although statistical data may be used to show pretext, "in order to create an inference of pretext, a plaintiff's statistical evidence must focus on eliminating nondiscriminatory explanations for the disparate treatment by showing disparate treatment between <u>comparable</u> individuals." <u>Timmerman v. U.S. Bank, N.A.</u>, 483 F.3d 1106, 1115 (10th Cir. 2007) (quotation omitted). Thus, statistical evidence must compare employees

19

who are "similarly situated." See id. But there is no evidence in the record regarding who these vice-presidents were, their responsibilities, skills, qualifications, or experience. Accordingly, this alleged pay disparity is insufficient to support an inference of discriminatory intent.

Lewis also argues that Ferguson called her "Aunt Bea" on a regular basis. However, such isolated and ambiguous comments, without any details, are by themselves insufficient to create a genuine issue as to unlawful discrimination. See Stone v. Autoliv ASP, Inc., 210 F.3d 1132, 1140 (10th Cir. 2000) ("[I]solated or ambiguous comments may be, as here, too abstract to support . . . an inference" of discrimination. (quotation omitted)). Because there is no genuine issue as to pretext, Lewis's Title VII claims cannot survive summary judgment.

### Case No. 09-2137

Lewis also appeals the district court's order taxing costs of various depositions and deposition exhibits to Lewis. Specifically, Lewis contends that the district court erroneously taxed as costs the depositions of Andrew Lewis, Mark Ferguson, Bill Allen, and Tamera Jensen. Lewis argues that these expenses could not be taxed as costs because the district court did not cite or quote these depositions in its order granting summary judgment.

We review the district court's award of costs only for an abuse of discretion. In re Williams Sec. Litigation-WCG Subclass, 558 F.3d 1144, 1148 (10th Cir. 2009). "The costs statute [28 U.S.C. § 1920] allows a judge or clerk of

20

any court of the United States to tax costs for transcripts and copies 'necessarily obtained for use in the case.'" Id. at 1147. Whether materials were "necessarily obtained for use in the case is a question of fact that we review only for clear error." Id. at 1149 (quotation omitted). Additionally, "[w]e review a district court's application of its local rules for an abuse of discretion." Amundsen v. Jones, 533 F.3d 1192, 1197 (10th Cir. 2008).

"To be recoverable, a prevailing party's transcription and copy costs must be reasonably necessary to the litigation of the case." Williams Sec., 558 F.3d at 1148 (quotation omitted). The district court ruled that costs for these depositions were appropriate under Local Rule 54.2(b)(2)(B) and (C).[9] The district court found that "[a]ll of the depositions for which costs were awarded were used by the parties and discussed by both sides in the course of briefing the motion for summary judgment. . . . Even though Horton did not attach [Ferguson's] deposition to its motion for summary judgment, nevertheless the Court found it necessary to use the deposition in its ruling." Appellant's App. at 25. Lewis

---

[9] The New Mexico District Court Local Rules of Civil Procedure provide:

A deposition is reasonably necessary to the litigation when:
   (A)   a substantial portion of the deposition is admitted into evidence or used at trial for impeachment purposes;
   (B)   the deposition is used by the Court in ruling on a motion for summary judgment; or
   (C)   the Court so determines.

D.N.M. Local R. 52.4(b)(2).

21

argues that under the Local Rules, depositions are "reasonably necessary to the litigation" only when they are "used by the Court," which requires the district court to quote or cite to that deposition. Appellant's Br. at 6. This argument is without merit. The Local Rules provide that "[a] deposition is reasonably necessary to the litigation when . . . [it] is used by the Court in ruling on a motion for summary judgment; or . . . the Court so determines." D.N.M. Local R. 54.2(b)(2) (emphasis added). Thus, the local rules plainly do not require depositions to be quoted or cited by the district court.

Further, Lewis's interpretation is not supported by the costs statute, 28 U.S.C. § 1920. See Williams Sec., 558 F.3d at 1149 (rejecting the argument "that a district court may only award costs for depositions the district court actually used in deciding summary judgment"). "Our cases establish that if deposition transcripts or copies were offered into evidence, were not frivolous, and were within the bounds of vigorous advocacy, costs may be taxed." Id. at 1148 (quotations omitted). There is no indication that the depositions were frivolous or otherwise inappropriate, and accordingly, costs were properly taxed. Thus, the district court did not abuse its discretion in awarding costs for these depositions.

Lewis also argues that certain deposition exhibits should not have been taxed as costs. Lewis did not argue before the district court that deposition exhibits are not taxable as costs because they were prepared only for the convenience of counsel. Therefore, we do not address that argument on appeal.

22

See Tilton v. Capital Cities/ABC, Inc., 115 F.3d 1471, 1475 (10th Cir. 1997) (declining to address argument regarding taxation of deposition exhibits where party failed to raise the issue before the district court). Even if we were to address Lewis's argument, she has not demonstrated that the district court abused its discretion. Lewis has offered no support for her claim that the deposition exhibits were made for the convenience of counsel. Instead, Lewis relies on other district court decisions concluding that deposition exhibits were made for the convenience of counsel in those particular cases. But it does not follow that the exhibits in the case at bar were made for convenience of counsel or that the district court otherwise abused its discretion.

We AFFIRM the district court's grant of summary judgment on Lewis's EPA and Title VII claims. We also AFFIRM the district court's order assessing costs.

Entered for the Court

Mary Beck Briscoe
Circuit Judge

23